# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-1302

**JENNIFER DIANE NUNEZ**

**VERSUS**

**PINNACLE HOMES, L.L.C. AND**
**SUA INSURANCE COMPANY**

************

## APPEAL FROM THE
## THIRTY-EIGHTH JUDICIAL DISTRICT COURT
## PARISH OF CAMERON, NO. 10-18501
## HONORABLE PENELOPE RICHARD, JUDGE

************

## J. DAVID PAINTER
## JUDGE

************

Court composed of John D. Saunders, Marc T. Amy, and J. David Painter, Judges.

Amy, J., concurs in part, dissents in part, and assigns reasons.

**AFFIRMED.**

**John C. Anderson**
**P. O. Box 82982**
**Baton Rouge, LA 70884**
**COUNSEL FOR DEFENDANTS-APPELLANTS:**
    **Pinnacle Homes, L.L.C. and Allen Lenard**

**J. Bryan Jones, III**
**P. O. Box 4540**
**Lake Charles, LA 70606**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
    **Jennifer Diane Nunez**

**PAINTER, Judge.**

Defendants, Pinnacle Homes, L.L.C. (Pinnacle) and Allen Lenard, appeal the judgment of the trial court finding that Pinnacle Homes and Lenard, personally, violated the New Home Warranty Act by failing to construct a house for Plaintiff, Jennifer Diane Nunez, that met state, parish, and FEMA elevation requirements and awarding damages in the amount of $210,600.00. Finding no error in the trial court's judgment, we affirm.

## FACTS

In written reasons for judgment, the trial court correctly outlined the underlying facts of the case as follows:

> On January 8, 2008, JENNIFER DIANE NUNEZ and PINNACLE HOMES, LLC entered into a Cost Plus Contract - Fixed Fee contract for the construction of a new home located on 111 Boudreaux Lane, in the Grand Lake area, in Cameron Parish, Louisiana. The fixed fee of the contract was $33,748.00, and the pre-construction estimate of the construction costs was $277,772.00. (See Plaintiff s Exhibit No. 4).

> Pertinent provisions of the construction contract are located in Section 4.2 and Section 4.4. Section 4.2 of the contract, provides that "[a]ll work shall be completed in a workman like manner, and shall comply with all applicable national, state and local building codes and laws." Section 4.4 provides that "[c]ontractor shall obtain all permits necessary for the work to be completed.'"

> . . . .

> Accu-Line Surveying, Inc.[] prepared an updated elevation certificate on or about September 18, 2007, which is dated March 12, 2006, which indicated that the Base Flood Elevation was 9.0 feet and Advisory Base Flood Elevation was 10.0 feet for the Nunez home. (See Plaintiff's Exhibit. No. 1). The elevation certificate also included the lowest adjacent grade at 4.61 feet and the highest adjacent grade at 5.48 feet.

> According to the testimony of Ernestine Horn, Cameron Parish Administrator, the base flood elevation is required by FEMA and the advisory base flood elevation is required by the parish. After Hurricane Rita, the State of Louisiana mandated all coastal parishes, including Cameron Parish, to add one (1) foot to all of the elevations

1

contained in the flood elevation maps. (See Trial Transcript of 8/1/2012, p. 56).

The permit issued by the Cameron Parish Police Jury for the construction of plaintiff's home[] required that the base flood elevation be 10 feet for the plaintiff's home. (See Plaintiff's Exhibit No. 6).

The post-construction elevation certificate prepared by Accu-Line Surveying, Inc.[] indicates that the elevation of plaintiiff's home is 8.66 feet. It also indicates that the lowest elevation of machinery or equipment servicing the building is 8.10 feet. (See Plaintiff's Exhibit No. 2).

. . . .

The plaintiff's home is below the required base flood elevation of 9 feet as required by FEMA and below the advisory base flood elevation of 10 feet as required by the permit issued by the Cameron parish Police Jury

Nunez filed this suit for breach of warranties and contract naming Pinnacle and SUA Insurance Co. (SUA) as defendants. She amended the petition to include Lenard, the owner of Pinnacle, and American Safety Casualty Insurance Co. (ASCI) as defendants. Nunez voluntarily dismissed the claims against SUA. The claims against ASCI were dismissed pursuant to motion for summary judgment.

The trial court denied Lenard's Exception of No Cause of Action and Pinnacle's motion for an order staying the proceedings and ordering arbitration. The matter was tried, and the trial court rendered judgment in favor of Plaintiff and awarded damages. Pinnacle and Lenard appeal.

## DISCUSSION

On appeal, Defendants dispute the trial court's finding that Plaintiff suffered damages because of the incorrect elevation of her house and that Lenard was personally liable for the failure to correctly elevate the house.

2

*Standard of Review*

The trial court found that:

> [T]he applicable law in this case is contained in the New Home Warranty Act. LSA-R.S. 9:3141-3150 *et seq*. Also applicable to the facts of this case is LSA-R.S.12:1320(D).
>
> The defendant, PINNACLE HOME[S], LLC, violated the New Home Warranty Act by not complying with the elevation standards imposed by FEMA, the State of Louisiana, and the Parish of Cameron.
>
> This finding is not controverted on appeal.
>
> The trial court's factual findings in cases involving the NHWA are subject to manifest error review. *Hutcherson v. Harvey Smith Const, Inc.*, 08-1046, p. 3 (La.App. 1 Cir. 2/13/09), 7 So.3d 775, 778. An appellate court cannot set aside the trial court's factual findings unless it determines there is no reasonable factual basis for the findings and the findings are clearly wrong. *Stobart v. State through Dept. of Transp. and Dev*[.], 617 So.2d 880, 882 (La.1993). Thus, if the findings are reasonable in light of the record reviewed in its entirety, this court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). With regard to questions of law, the appellate review is simply a review of whether the trial court was legally correct or legally incorrect. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and render judgment on the record. *Pierce v. State, Office of Legislative Auditor*, 2007-0230, p. 7 (La.App. 1 Cir. 2/8/08), 984 So.2d 61, 67, *writ denied*, 2008-0542 (La.4/25/08), 978 So.2d 369.

*Jenkins Bldg. Supply, Inc. v. Thigpen*, 09-903, pp. 3-4 (La.App. 1 Cir. 12/23/09), 34 So.3d 867, 869.

Defendants raise questions about whether Plaintiff proved damages due to the violation of the act and whether they proved personal liability on the part of Lenard. These are questions of fact. Therefore, we will review this matter under a manifest error standard.

3

*Damages*

We first consider Defendants' assertion that Plaintiff failed to prove damages to a reasonable certainty. The trial court, in its written reasons, found as follows with regard to damages:

> The plaintiff provided two estimates of her damages. The first estimate was the cost to elevate plaintiff's slab home to proper elevation. The total cost of the elevation was $201,600. (See Plaintiff's Exhibit No. 3). Defendant argues that this amount is substantial given the total price of plaintiff's home.
>
> The second estimate of damages was the increased cost of flood insurance premiums over the life of plaintiff's mortgage both through the National Flood Insurance Program and through a private insurance policy. (See Plaintiff's Exhibit No. 8 and 9). From the court's calculations, the increased insurance premiums could result in damages of as little as $21,750 (NFIP) or as high as $142,440, (private policy) over a 30 year period. Thereafter, if Mrs. Nunez wanted to purchase flood insurance for her home, she would not be compensated. Mrs. Horn explained that plaintiff may face other damages if her home is not at proper elevation. She could be sued by the parish and be subject to a fine of up to $500, court costs, and possible jail time, under the parish ordinance. If found guilty under the ordinance, Mrs. Nunez's property would be designated a section 1316 property with FEMA and therefore would be ineligible to purchase flood insurance through the National Flood Insurance Program. Further, that designation would remain with the property and would be applicable to future owners of the property. Plaintiff would be required to disclose that designation to potential buyers of her home. Further, given that the property is below the base flood elevation required by FEMA, it is likely that the property may not be adequately protected from future flood events. All of these damages are too speculative to calculate and almost impossible for the plaintiff to prove with any legal certainty.
>
> The court finds that the elevation of plaintiff's home is the only way to adequately compensate plaintiff for the damages she suffered in this case. Damages are hereby awarded in the amount of $201,600, the cost to elevate plaintiff's home to the proper elevation, plus legal interest from the date of judicial demand.

Defendants assert that the trial court found that any calculation of damages was too speculative to prove with legal certainty. However, a reading of the reasons does not support this conclusion. Rather the trial court found that damages other than the cost to elevate the house to the correct level were too speculative to

4

prove with certainty. Therefore, she awarded the amount needed to elevate the home to the correct level. The record supports the conclusion that the house was not built at the elevation required by the State, the Parish, and FEMA. This fact is undisputed. Further, trial testimony supports the conclusion that the amount required to elevate the house to the correct level was $201.600.00. Defendants did not dispute the fact that this amount would be required to elevate the house. The New Home Warranty Act allows for an award of the amount required to repair a defect as an appropriate award of damages. *See* La.R.S. 9:3149. Accordingly, we find no manifest error or abuse of discretion in the trial court's conclusion that this is the amount required to repair the house or in its award of damages in this amount.

*Personal Liability of Lenard*

In the remaining assignments of error, Defendants argue that the trial court erred in finding Lenard personally liable for the defect in Plaintiff's house.

The trial court gave the following reasons for its determination of personal liability:

> The defendant, ALLEN LENARD, committed professional negligence by not properly calculating and/or supervising the amount of dirt that would be required to bring the property to proper grade/elevation, and by failing to have an elevation shot performed after the dirt work was completed and prior to beginning construction on plaintiff's home. Although Mr. Lenard initially testified in his deposition and on the first day of trial that he consulted with Keith Daigle on the calculation of the amount of dirt, he later contradicted his testimony at the second day of trial and testified that he left that up to the dirt contractor. Mr. Lenard also testified on February 21, 2013, that it was usually the dirt contractor that would be responsible for obtaining another elevation shot after the dirt work was completed. His testimony was contradicted by his deposition testimony wherein he testified that his company had the equipment to perform the elevation shot, and that Cletis or Keith Daigle would have been the one to do it. Obviously, it was not done by Keith Daigle the dirt contractor, nor Cletis, an employee of PINNACLE HOME, LLC. He later testified during the defense's case that it would have been Martine Nocilla, with his company, that would have been responsible

for shooting the elevation, because Cletis was not working with him at the time of Mrs: Nunez's foundation work. Nevertheless, ultimately, as the licensed contractor on the job, it was Mr. Lenard's responsibility to ensure that both of these things were done and done correctly. Therefore, the court finds that the defendant, ALLEN LENARD, is liable to plaintiff personally pursuant to LSA R.S. 12:1320(D). *See Regions Bank v. Ark-La-Tex Water Gardens, L.L.C.,* 997 So.2d 734, (La. App. 2 Cir. 11/5/08), *writ denied*, 5 So.3d 119 (La. 3/13/2009).

The court further cited La.R.S. 12:1320(D), which provides that:

A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.

B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.

C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.

D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

Defendant asserts that the finding of personal liability was incorrectly founded on the fact that Lenard holds a contractor's license rather than on any affirmative action or failure to act by Lenard. The trial court, however, found personal involvement and inaction by Lenard which it found constituted a "breach of professional duty or other negligent or wrongful act." *Id.* This factual finding is based on Lenard's own testimony, and we will not overturn it absent manifest error. Finding none, we find no error in the trial court's conclusion that Plaintiff carried her burden of proof in this regard.

6

## CONCLUSION

Having found no error in the judgment of the trial court, we affirm. Costs of this appeal are assessed to Defendants-Appellants, Pinnacle Homes, L.L.C. and Allen Lenard.

**AFFIRMED.**

NUMBER 13-1302

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA


JENNIFER DIANE NUNEZ

VERSUS

PINNACLE HOMES, LLC, ET AL.


AMY, J., concurring in part and dissenting in part.

I join in the majority opinion with regard to the imposition of damages against the defendant limited liability company.

However, I respectfully dissent from the remainder of the majority opinion since I conclude that the trial court erred in finding Mr. Lenard personally liable. In reasons for ruling, the trial court found Mr. Lenard "professionally negligent" and imposed personal liability, concluding that it was Mr. Lenard's responsibility to ensure the quality of the elevation and foundation work. In my opinion, the record does not support a determination that personal liability was appropriate pursuant to La.R.S. 12:1320(D).

> Louisiana Revised Statutes 12:1320(B) broadly provides that:
>
> Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.

Louisiana Revised Statutes 12:1320(D) thereafter sets forth exceptions to that general pronouncement, providing for an LLC member/manager's liability upon "any breach of professional duty *or* other negligent or wrongful act by such person[.]" (Emphasis added.)

Under the facts of this case, I do not see that Mr. Lenard, who testified that he is a licensed contractor, may be considered a "professional" within the context of the statute. Rather, I view the breach of professional duty exception as one that

must arise within the context of those professions whose members owe separate, non-contractual duties to their clients. Otherwise, it seems to me that any member/manager/employee of an LLC working within that LLC's business could be held personally liable upon a finding that he or she was "professionally negligent" as was determined in this case. It is my view that such a broad reaching application would circumvent, and render meaningless, the limitation of liability otherwise provided by La.R.S. 12:1320(B).

Recently, in *Ogea v. Merritt*, 13-1085 (La. 12/10/13), _ So.3d _, _, the supreme court specifically refrained from reaching the question of whether a general contracting license "elevates an individual to the status of a 'professional' as contemplated by the legislature[.]" It noted, however, that at the time the LLC statutes were enacted, the term "professional" had a defined meaning within the body of business law and that statutory provisions existed for the creation of a variety of professional corporations. *Id.* Those professional corporations are designated within Revised Statutes Title 12 and include professional corporate entities for law, medical, dental, accounting, chiropractic, nursing, architecture, optometry, psychology, veterinary medicine, occupational therapy, and social work. Contracting is not included among those professional corporations listed in Title 12. Additionally, and again within the context of the limited liability law, the supreme court observed that the definition of "business" makes a distinction between a "trade" and a "profession." *Id.* at _. *See also* La.R.S. 12:1301(A)(2). *See also* La.R.S. 37:2150 (which references the "contracting *vocation*")(emphasis added). Given the lack of indicia that contractors owe separate, non-contractual duties to their clients as members of traditionally accepted professions may, I do not find that the plaintiff has demonstrated that the "breach of professional duty" exception applies to Mr. Lenard in his personal capacity.

2

Alternatively, La.R.S. 12:1320(D) provides for a cause of action against an LLC member for "other negligent or wrongful act by such person[.]" In analyzing this exception, the supreme court identified four factors to be considered in balancing the limitation of liability provided by the statute while also affording the terms "negligent" and "wrongful" acts their commonly understood meaning:

> 1) whether a member's conduct could be fairly characterized as a traditionally recognized tort;
>
> 2) whether a member's conduct could be fairly characterized as a crime, for which a natural person, not a juridical person, could be held culpable;
>
> 3) whether the conduct at issue was required by, or was in furtherance of, a contract between the claimant and the LLC; and
>
> 4) whether the conduct at issue was done outside the member's capacity as a member.

*Ogea*, _ So.3d at _. It is the last two factors that I find determinative of this case.

Certainly, in my opinion, the complained-of conduct here (the supervision of his own employees or of subcontractors in the elevation aspect of the construction) was required by or in furtherance of the contract between the plaintiff and the LLC. On this point, the supreme court remarked that, since an LLC is a juridical person, "it follows that if the reason a member is engaged in the conduct at issue is to satisfy a contractual obligation of the LLC, then the member should be more likely to qualify for the protections of the general rule of limited liability[.]" *Ogea* at _. In this case, the contract at issue was, in fact, entered into between the plaintiff and the LLC. Further, it is clear from the testimony that the elevation/foundation work was tasked to that company. Thus, in my opinion, Mr. Lenard's role in the supervision of his own employees and/or subcontractors in that aspect of the home construction was in furtherance of that contract.

As for the final element of whether Mr. Lenard's conduct arose inside or outside of the LLC, it seems to me that, while perhaps ultimately negligent, that

3

conduct was again within the context of the LLC's business. There is no indication that Mr. Lenard was acting in his own personal capacity. Although the plaintiff testified that the signature on the underlying contract was that of Mr. Lenard, the contract lists the parties as the plaintiff and the contracting company. It did not list Mr. Lenard personally as the contractor.

Notably, the trial court rendered judgment in this case prior to the supreme court's release of *Ogea*. However, the reasons for ruling in this case essentially reveal a finding of poor workmanship for which Mr. Lenard, as contractor, was responsible. Yet, *Ogea*, _ So.3d at _, explains that "a showing of poor workmanship arising out of a contract entered into by the LLC, in and of itself, does not establish a 'negligent or wrongful act' under La.R.S. 12:1320(D). To hold that poor workmanship alone sufficed to establish personal liability would allow the exception in La.R.S. 12:1320(D) to negate the general rule of limited liability in La.R.S. 12:1320(B)."

Thus, finding neither of the exceptions of La.R.S. 12:1320(D) applicable, I would reverse the trial court's imposition of personal liability. I would affirm the remaining aspects of the case.

4