PAINTER, Judge.
II This matter has been remanded to this court by the Louisiana Supreme Court with instructions to consider its holdings in Ogea v. Merritt, 13-1085 (La.12/10/13), 130 So.3d 888. After considering Ogea, we again affirm.
FACTS
In written reasons for judgment, the trial court correctly outlined the underlying facts of the case as follows:
On January 8, 2008, JENNIFER DIANE NUNEZ and PINNACLE HOMES, LLC entered into a Cost Plus Contract — Fixed Fee contract for the construction of a new home located on III Boudreaux Lane, in the Grand Lake area, in Cameron Parish, Louisiana. The fixed fee of the contract was $33,748.00, and the pre-construction estimate of the construction costs was *73 $277,772.00. (See Plaintiffs Exhibit No. 4).
Pertinent provisions of the construction contract are located in Section 4.2 and Section 4.4. Section 4.2 of the contract, provides that “[a]ll work shall be completed in a workman like manner, and shall comply with all applicable national, state and local building codes and laws.” Section 4.4 provides that “[c]on-tractor shall obtain all permits necessary for the work to be completed.”
[[Image here]]
Accu-Line Surveying, Inc.[ ] prepared an updated elevation certificate on or about September 18, 2007, which is dated March 12, 2006, which indicated that the Base Flood Elevation was 9.0 feet and Advisory Base Flood Elevation was 10.0 feet for the Nunez home. (See Plaintiffs Exhibit No. 1). The elevation certificate also included the lowest adjacent grade at 4.61 feet and the highest adjacent grade at 5.48 feet.
According to the testimony of Ernestine Horn, Cameron Parish Administrator, the base flood elevation is required by FEMA and the advisory base flood elevation is required by the parish. After Hurricane Rita, the State of Louisiana mandated all coastal parishes, including Cameron Parish, to add one (1) foot to all of the elevations contained in the flood elevation maps. (See Trial Transcript of 8/1/2012, p. 56).
The permit issued by the Cameron Parish Police Jury for the construction of plaintiffs home[] required that the base flood elevation be 10 feet for the plaintiffs home. (See Plaintiffs Exhibit No. 6).
|/The post-construction elevation certificate prepared by Accu-Line Surveying, Inc.[ ] indicates that the elevation of plaintiffs home is 8.66 feet. It also indicates that the lowest elevation of machinery or equipment servicing the building is 8.10 feet. (See Plaintiffs Exhibit No. 2).
[[Image here]]
The plaintiffs home is below the required base flood elevation of 9 feet as required by FEMA and below the advisory base flood elevation of 10 feet as required by the permit issued by the Cameron parish Police Jury
Nunez filed this suit for breach of warranties and contract naming Pinnacle and SUA Insurance Co. (SUA) as defendants. She amended the petition to include Lenard, the owner of Pinnacle, and American Safety Casualty Insurance Co. (ASCI) as defendants. Nunez voluntarily dismissed the claims against SUA. The claims against ASCI were dismissed pursuant to motion for summary judgment.
The trial court denied Lenard’s Exception of No Cause of Action and Pinnacle’s motion for an order staying the proceedings and ordering arbitration. The matter was tried, and the trial court rendered judgment in favor of Plaintiff and awarded damages. Pinnacle and Lenard appealed the matter to this court. This court affirmed finding no error in the judgment of the trial court. Pinnacle and Lenard took writs to the Louisiana Supreme Court, and the supreme court remanded the matter to this court.
DISCUSSION
On appeal, Defendants disputed the trial court’s finding that Plaintiff suffered damages because of the incorrect elevation of her house and that Lenard was personally liable for the failure to correctly elevate the house. On remand, we need not reconsider the issue of damages. We include by reference of finding with regard to damages from our original opinion herein. Here, we consider whether |SNunez *74 proved personal liability on the part of Lenard, in light of the supreme court’s holding in Ogea.

Personal Liability of Lenard

The' trial court gave the following reasons for its determination of personal liability:
The defendant, ALLEN LENARD, committed professional negligence by not properly calculating and/or supervising the amount of dirt that would be required to bring the property to proper grade/elevation, and by failing to have an elevation shot performed after the dirt work was completed and prior to beginning construction on plaintiffs home. Although Mr. Lenard initially testified in his deposition and on the first day of trial that he consulted with Keith Daigle on the calculation of the amount of dirt, he later contradicted his testimony at the second day of trial and testified that he left that up to the dirt contractor. Mr. Lenard also testified on February 21, 2018, that it was usually the dirt contractor that would be responsible for obtaining another elevation shot after the dirt work was completed. His testimony was contradicted by his deposition testimony wherein he testified that his company had the equipment to perform the elevation shot, and that Cletis or Keith Daigle would have been the one to do it. Obviously, it was not done by Keith Daigle the dirt contractor, nor Cletis, an employee of PINNACLE HOME, LLC. He later testified during the defense’s case that it would have been Martine Nocilla, with his company, that would have been responsible for shooting the elevation, because Cletis was not working with him at the time of Mrs. Nunez’s foundation work. Nevertheless, ultimately, as the licensed contractor on the job, it was Mr. Lenard’s responsibility to ensure that both of these things were done and done correctly. Therefore, the court finds that the defendant, ALLEN LENARD, is liable to plaintiff personally pursuant to LSA R.S. 12:1320(D). See Regions Bank v. Ark-La-Tex Water Gardens, L.L.C., 997 So.2d 734, (La.App. 2 Cir. 11/5/08), writ denied, 5 So.3d 119 (La.3/13/2009).
The court in Ogea set out factors gleaned from LaR.S. 12:1320(D), to be used in determining whether a member, manager, employee or agent of a limited liability company may be held personally liable for damage causing acts or failures to act. LaR.S. 12:1320(D) provides that:
A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.
|4B. Except as otherwise specifically 'set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.
C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person’s rights against or liability to the limited liability company.
D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any *75 such person because of any fraud practiced upon it by him.
The trial court found personal involvement and inaction by Lenard which it found constituted a “breach of professional duty or other negligent or wrongful act.” Id. One of the exceptions to the protection granted a member, manager, employee, or agent of a limited liability company arises from breach of a professional duty. The court in Ogea noted that the statute does not define the phrase “breach of a professional duty.” The court further noted that:
Again, in searching for the intended meaning of “any breach of professional duty” in La. R.S. 12:1320(D), we recall that “this Court must assume the Legislature was aware of existing laws on the same subject.” [Foti v.] Holliday, 09-0093 at 6, 27 So.3d [813] at 817 [(La.10/30/09)]. Recognizing that the word “professional” is the focus of the quoted exception, the following principle must be observed as well: “Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.” La. R.S. 1:3.
When the LLC statutes were enacted, “professional” had a clearly defined technical meaning within the law of business entities. See JAMES S. HOLLI-DAY, JR., & H. BRUCE SHREVES, LOUISIANA PRACTICE SERIES: LOUISIANA CONSTRUCTION LAW § 1:9 pp. 10-11 (2013) (“Since 1964, professional law corporations have been possible in Louisiana. In 1968, with re-codification of Louisiana’s corporate laws, professional medical corporations were also permitted. Since then, Louisiana has enacted statutory provisions for professional corporations for the |fidental, accounting, chiropractic, nursing, architectural, optometry, psychology, veterinary medicine and architectural-engineering. ...”)
The supreme court in Ogea, however, did not reach the question of whether a licensed contractor is a professional for purposes of the exception. In that case, the court found that it did not need to reach the question because there was no evidence of record that Merritt was a licensed contractor. In this case, the evidence clearly supports the conclusion that Lenard held a contractor’s license individually. Therefore, we must consider the question of whether a licensed contractor is a professional so that a breach of professional duty would render him personally liable for the damage incurred by Nunez.
Although a building contractor is not one of the “legislatively recognized professions” set out in Ogea, we will look to other sources to determine whether, under the facts of this case, a licensed contractor should be recognized as a professional.
Black’s Law DictionaRY 1210 (6th ed. 1990) defines “professional” as: “One engaged in one of the learned professions or in an occupation or in an occupation requiring a high level of training and proficiency.” We further note that the legislature has, in La.R.S. 39:1484, where it defines terms used in the chapter on public finance, defined “professional service” as follows:
[W]ork rendered by an independent contractor who has a professed knowledge of some department of learning or science used by its practical application to the affairs of others or in the practice of an art founded on it, which independent contractor shall include but not be limited to lawyers, doctors, dentists, psychologists, certified advanced practice nurses, veterinarians, architects, engineers, *76 land surveyors, landscape architects, accountants, actuaries, and claims adjusters. . A profession is a vocation founded upon prolonged and specialized intellectual training which enables a particular service to be rendered. The word “professional” implies professed attainments in special knowledge as distinguished from mere skill. For contracts with a total amount of compensation of fifty thousand dollars or more, the definition of “professional service” shall be limited to lawyers, doctors, dentists, psychologists, certified advanced practice nurses, | ^veterinarians, architects, engineers, land surveyors, landscape architects, accountants, actuaries, claims adjusters, and any other profession that may be added by regulations adopted by the office of contractual review of the division of administration.
Further, in La.R.S. 3:3804, the legislature distinguishes between professions and occupations regulated by the Horticulture Commission, noting that arborists, retail florists, wholesale florist, landscape horticulturist, landscape architect, utility arbor-ists, and landscape irrigation contractors are professionals while nursery stock dealers and cut flower dealers considered to be practicing occupations. We therefore conclude that professional status may extend beyond the narrow scope of the professions enumerated in the citation from Ogea hereinabove.
Our analysis of the record and the statutes regarding licensing and regulation of contractors convinces us that, with regard to the construction contract with Nunez, Lenard was acting as a professional with attainments in special knowledge, particularly as evidenced by his having attained licensure from the state, as distinguished from mere skill. We note that he tested for environmental remediation, commercial contracting, and residential contracting and, according to his testimony, received “pretty much the highest scores you can get.” Therefore, we must determine whether the trial court was in error in finding that Lenard breached a professional duty owed to Nunez.
There can be no question but that the failure to elevate the house as required by the permit issued by Cameron Parish is a defect. Lenard’s own testimony indicates that it was his negligence which resulted in this defect. He testified in his deposition that he was aware of the FEMA requirements for home building in Cameron Parish. He states in trial testimony that he was in possession of the building permit but thought that the house needed to be elevated to nine feet, rather than the ten indicated by the permit. The house was not even elevated to the nine 17feet he believed to be required. As noted by the trial court, Pinnacle had the equipment to shoot the elevation and that a Pinnacle employee, who as the trial court noted, would have been under his direct supervision as contractor, would have been responsible to do so. Lenard indicated in deposition testimony that neither he nor anyone in his employ checked for a proper elevation after dirt work to raise the site elevation was finished. As in Matherne v. Barnum, 11-0827 (La.App. 1 Cir. 3/19/12), 94 So.3d 782 and Regions Bank v. Ark-La-Tex Water Gardens, L.L.C., 43,604 (La.App. 2 Cir. 11/5/08), 997 So.2d 734, writ denied, 09-0016 (La.3/13/09), 5 So.3d 119, the negligence of the contractor resulted in a breach of a professional duty such that he is personally liable for the resulting damages.
CONCLUSION
Having found no error in the judgment of the trial court, we affirm. Costs of this appeal are assessed to Defendants-Appel *77 lants, Pinnacle Homes, L.L.C. and Allen Lenard.
AFFIRMED.
AMY, J., dissents and assigns reasons.