# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #050

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **14th day of October, 2015**, are as follows:

**BY GUIDRY, J.**:

2015-C -0087       JENNIFER DIANE NUNEZ v. PINNACLE HOMES, L.L.C. AND SUA INSURANCE
                   COMPANY (Parish of Cameron)

                   For the reasons set forth above, the judgment of the court of
                   appeal affirming the trial court' judgment in favor of the
                   plaintiff is reversed insofar as it finds the individual member
                   of the L.L.C. personally liable.  Judgment is hereby rendered in
                   favor of the defendant, Mr. Lenard, in his individual capacity as
                   a member of the L.L.C., dismissing all claims against him.
                   REVERSED; JUDGMENT RENDERED.

                   JOHNSON, C.J., dissents and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2015-C-0087

JENNIFER DIANE NUNEZ

VERSUS

PINNACLE HOMES, L.L.C. and SUA INSURANCE COMPANY

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL
THIRD CIRCUIT, PARISH OF CAMERON

**GUIDRY, Justice**

We granted the defendants' writ application in this case to determine whether the lower courts erred by imposing personal liability on the sole member and manager of a limited liability company ("L.L.C."). The issue presented concerns the scope of the narrow professional duty exception to the general rule of limited liability for members, managers, employees, and agents of an L.L.C. set forth in La. Rev. Stat. 12:1320. We find the plaintiff failed to show the defendant member of the L.L.C. owed her a professional duty outside the confines of the contract. We further find the defendant was not personally liable to the plaintiff for his negligent or wrongful acts. For the reasons set forth below, we reverse the rulings of the lower courts.

**FACTS**

On January 8, 2008, Jennifer Diane Nunez ("Mrs. Nunez") and Pinnacle Homes, L.L.C. ("Pinnacle"), entered into a cost-plus contract ("the contract") for the construction of a home in Cameron Parish. Allen Lenard ("Mr. Lenard"), a state licensed residential and commercial construction contractor, signed the contract in his capacity as the sole member of Pinnacle. The contract provided that

the work would comply with all applicable national, state, and local building codes and laws. The Cameron Parish Police Jury issued a permit requiring that the base flood elevation for Mrs. Nunez's home be 10 feet above sea level, one foot higher than the base flood elevation required by FEMA, which is 9 feet above sea level.

After ordering the post-construction elevation certificate necessary to secure flood insurance, Mrs. Nunez was informed by Accu-Line Surveying, Inc., that her house did not meet the elevation required under the permit and the flood insurance rate maps for Cameron Parish. As the trial court found, Mr. Lenard failed to properly supervise or to calculate the proper elevation of Mrs. Nunez's property. The post-construction elevation of the house is 8.66 feet above sea level, and the lowest elevation of machinery or equipment serving the residence is 8.10 feet above sea level. Because the house was built on a concrete slab, the estimated cost to raise it to the required base flood elevation is $201,600.

**PROCEDURAL HISTORY**

On July 28, 2009, Mrs. Nunez filed a lawsuit against Pinnacle and SUA Insurance Co. ("SUA") for various breaches of contract, and breach of warranty under the New Home Warranty Act, La. Rev. Stat. 9:3141-3150. She later amended her petition to include Mr. Lenard, in his personal and individual capacity. She also voluntarily dismissed the claims against SUA, and amended her petition to include American Safety Casualty Insurance Co. ("ASCI") as defendants.

ASCI filed a Motion for Summary Judgment on the ground of the policy's "Work Product" exclusion, which does not provide coverage for the contractor's own defective work. The trial court granted ASCI's motion and dismissed all claims against them.

2

Mr. Lenard and Pinnacle filed an Exception of No Cause of Action, a Motion for Summary Judgment, and a motion for an order staying the proceedings and ordering arbitration. Essentially, they asserted that Mrs. Nunez had no factual or legal basis to subject Mr. Lenard to personal liability, because he was not a party to the contract, and because Pinnacle was and has been operated as a separate entity from Mr. Lenard. The defendants' motions and exception were denied. After a trial on the merits, Pinnacle was found liable for breach of contract, while Mr. Lenard was found personally liable on the ground of professional negligence under La. Rev. Stat. 12:1320(D). The court awarded damages in favor of Mrs. Nunez.

Pinnacle and Mr. Lenard appealed, and a majority of the court of appeal affirmed, finding no error in the judgment of the trial court. *Nunez v. Pinnacle Homes, L.L.C.*, 13-1302 (La. App. 3 Cir. 4/02/14), 135 So. 3d 1283, 1985. Pinnacle and Mr. Lenard sought writs in this court, which were granted, and the case was remanded to the court of appeal with instructions to consider this court's decision in *Ogea v. Merritt*, 13-1085 (La. 12/10/13), 130 So.3d 888. On rehearing, a majority of the court of appeal again affirmed the trial court's judgment, finding Mr. Lenard personally liable for the failure to correctly elevate the house. *Nunez v. Pinnacle Homes, L.L.C.*, 13-1302, p. 7 (La. App. 3 Cir. 12/17/14), 158 So.3d 71, 76. In support of its reasoning, the court of appeal majority quoted Black's Law Dictionary, which defines "professional" as: "One engaged in one of the learned professions or in an occupation requiring a high level of training and proficiency." Further, the majority referred to La. Rev. Stat. 39:1484, related to the chapter on public finance, which defines "professional service," although no mention of

3

"contractors" is made in the statute.[1] Finally, the majority quoted La. Rev. Stat. 3:3804, which distinguishes between professions and occupations regulated by the Horticulture Commission, to "conclude that professional status may extend beyond the narrow scope of the professions enumerated" in La. Revised Statues, Title 12, dedicated to the general law of business entities. *Nunez*, 13-1302 at 5-6, 158 So.3d at 75-76. While none of the quoted statutes mentioned building contractors, the majority below held that its "analysis of the record and the statutes regarding licensing and regulation of contractors convinces [it] that […] Lenard was acting as a professional with attainments in special knowledge, particularly as evidenced by his having attained licensure from the state, as distinguished from mere skill." *Id.*

While not contesting the L.L.C.'s contractual liability, Mr. Lenard and Pinnacle sought a writ from this court, arguing the court of appeal erred by imposing personal liability upon Mr. Lenard for breach of professional duty, on the ground that he was an individually licensed contractor. The writ was granted to address the scope of the exceptions to the principle of non-liability of members, managers, employees, or agents of a L.L.C. under La. Rev. Stat. 12:1320(D).

**DISCUSSION**

I)      General Statement of the Law

The instant case requires us to interpret and apply a statute. In our civilian jurisdiction, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Civ. Code

---

[1] While it does not impact our reasoning in this case, La. Rev. Stats. 39:1481-1493 have been repealed by Acts 2014, No. 864, § 3, eff. Jan. 1, 2015.

4

art. 9. *See also* La. Rev. Stat. 1:4 ("When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit"). The purpose of the law must nevertheless be sought when its language is susceptible of different meanings. *See* La. Civ. Code art. 10. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. La. Rev. Stat. 1:3. The word "shall" is mandatory and the word "may" is permissive. *Id.* Furthermore, when the words of a law are ambiguous, their meaning must be sought by examining the text in which they occur, and the text of the law as a whole. La. Civ. Code art. 12.

The present lawsuit was brought against a limited liability company ("L.L.C.") and against a member/manager thereof in his individual capacity. As we explained in *Ogea*, pp. 5-6, 130 So.3d at 894-95, the personalities of an L.L.C. and its members are wholly separate by law. *See also* La. Civ. Code art. 24; La. Rev. Stat. 12:1301.[2] In allowing for limited liability companies, the legislature clearly intended to promote business in the state by limiting personal liability for some debts incurred or acts performed on behalf of business entities. *See Regions Bank v. Ark-La-Tex Water Gardens, L.L.C.*, 43-604 (La. App. 2 Cir. 11/5/08), 997

---

[2] La. Rev. Stat. 12:1301 provides in part:

> (10) "Limited liability company" or "domestic limited liability company" means an entity that is an unincorporated association having one or more members that is organized and existing under this Chapter. No limited liability company organized under this Chapter shall be deemed, described as, or referred to as an incorporated entity, corporation, body corporate, body politic, joint stock company, or joint stock association.
>
> * * *
>
> (12) "Manager" or "managers" means a person or persons designated by the members of a limited liability company to manage the limited liability company as provided in its articles of organization.
>
> (13) "Member" means a person with a membership interest in a limited liability company with the rights and obligations specified under this Chapter."

So.2d 734, 740; *see also W.J. Spano Company, Inc. v. Mitchell*, 05-2115 (La. App. 1 Cir. 9/15/06), 943 So.2d 1131.  Thus, the legislature intended to shield individual members, managers, and employees of an L.L.C. from liability, albeit with certain exceptions.  To that end, the legislature established "narrowly defined circumstances" under which individual members of an L.L.C. may be subject to individual personal liability.  *Ogea*, *id.*  The liability protection afforded to the members, managers, employees, and agents of an L.L.C., as well as the exceptions thereto, are set forth in the statute at issue, La. Rev. Stat. 12:1320, entitled "Liability to third parties of members and managers," and which provides:

> A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.
>
> B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.
>
> C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.
>
> D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

La. Rev. Stat. 12:1320.

Under La. Rev. Stat. 12:1320, the liability of a member of an L.L.C. "*shall at all times be determined solely and exclusively*" by the provisions of Chapter 22 of Title 12 of the Revised Statutes.  [emphasis added.]  La. Rev. Stat. 12:1320(A).  *See also Ogea*, 13-1085, p. 8, 130 So.3d at 896.  As we explained in *Ogea*, the

language of La. Rev. Stat. 12:1320(B) clearly establishes the limited liability of members of an L.L.C. as a general rule, where it states that "except as otherwise specifically set forth in this Chapter," personal liability of an L.L.C. member acting in such capacity is barred. *Id.* Finally, La. Rev. Stat. 12:1320(D) enumerates the "narrowly defined circumstances" in which an L.L.C. member may be held personally liable, by exception to the general rule stated in subsections (A) and (B). *Ogea*, 13-1085 pp. 5-6, 130 So.3d at 894-95. Therefore, limited liability of an L.L.C. member shall be construed as the general rule and personal liability as an exception strictly framed by the law.

At issue here is the interpretation of the following exceptions to the general rule of limited liability: breach of professional duty and negligent or wrongful act.[3] *See* La. Rev. Stat. 12:1320(D). First, we are required to determine whether the lower courts erred in finding that an individually licensed building contractor is a "professional" under La. Rev. Stat. 12:1320(D). Though not decided by the lower courts, we are further required to determine whether the failure to build Mrs. Nunez's house to the proper elevation was a "negligent or wrongful act" sufficient to invoke Mr. Lenard's personal liability.

Where there is no dispute as to the dispositive facts, the issue can be decided as a matter of law and the review is *de novo*. *Kevin Associates, L.L.C. v. Crawford*, 03-0211, p.15 (La. 1/30/04), 865 So.2d 34, 43. Because the facts of this case are not in dispute, we are called upon to interpret, and then apply, the relevant dispositions of La. Rev. Stat. 12:1320 in the light of the general rules of statutory construction, as well as our own jurisprudence.

II)    Breach of Professional Duty

---

[3] Mrs. Nunez has not asserted fraud by Mr. Lenard.

We hold the lower courts erred when they found Mr. Lenard to be a "professional" within the meaning of La. Rev. Stat. 12:1320(D). The courts below improperly held him personally liable for breach of a professional duty under La. Rev. Stat. 12:1320(D), on the sole ground that he was a contractor, individually licensed by the State of Louisiana. *See Nunez*, p. 6, 158 So.3d at 76.

In *Ogea*, we noted the legislature in La. Rev. Stat. 12:1320(D) did not define "any breach of professional duty," but therein we explained our interpretation of the phrase as follows:

> [I]n searching for the intended meaning of "any breach of professional duty" in La. Rev. Stat. 12:1320(D), we recall that "this Court must assume the Legislature was aware of existing laws on the same subject." [*Foti v. Holliday*, 09-0093 p. 6 (La. 10/30/09), 27 So.3d 813, 817]. Recognizing that the word "professional" is the focus of the quoted exception, the following principle must be observed as well: "Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." La. Rev. Stat. 1:3.
>
> When the LLC statutes were enacted, "professional" had a clearly defined technical meaning within the law of business entities. *See* JAMES S. HOLLIDAY, JR., & H. BRUCE SHREVES, LOUISIANA PRACTICE SERIES: LOUISIANA CONSTRUCTION LAW § 1:9 pp. 10-11 (2013) ("Since 1964, professional law corporations have been possible in Louisiana. In 1968, with recodification of Louisiana's corporate laws, professional medical corporations were also permitted. Since then, Louisiana has enacted statutory provisions for professional corporations for the dental, accounting, chiropractic, nursing, architectural, optometry, psychology, veterinary medicine and architectural-engineering professions." (Footnotes omitted.))
>
> *Ogea*, pp. 12-13, 130 So.3d at 898-99.

In *Ogea*, we concluded the plaintiff had introduced no evidence the defendant was a member of one of these legislatively-recognized professions. *Id.*, p. 13, 130 So.3d at 899. We further found no merit to the argument that the defendant's role as a contractor equated to a professional role and that derogation

8

from acceptable standards for contractor should likewise be found to equate to a "breach of professional duty" under La. Rev. Stat. 12:1320(D). We declined to make such a finding in that case primarily because the plaintiff had failed to even show the defendant was individually licensed and because it appeared the L.L.C. itself held the contractor's license. Thus, we did not reach the question of whether such licensing elevates an individual member of an L.L.C. to the status of a professional as contemplated by the legislature in La. Rev. Stat. 12:1320(D), though we explicitly were not suggesting that mere licensure would result in one being considered a professional. *Id.*

We answer that question today, however, because it was established in the instant case that Mr. Lenard was an individually licensed contractor, and the lower courts have held him personally liable on that basis. We thus hold the lower courts erred in imposing personal liability on the individually licensed contractor as a "professional" within the meaning of La. Rev. Stat. 12:1320. In enacting the statutory provisions for an L.L.C., the legislature defined "business" as "any trade, occupation, profession, or other commercial activity engaged in for gain, profit or livelihood." La. Rev. Stat. 12:1301. Accordingly, the legislature surely recognized distinctions among these various pursuits for a livelihood, given that they are listed disjunctively. *See Regions Bank v. Ark-La-Tex Water Gardens, L.L.C.*, 43,604 (La. App. 2 Cir. 11/5/08), 997 So.2d 734, 741 (Caraway, J., dissenting in part). As we noted in *Ogea*, the legislature when it enacted La. Rev. Stat. 12:1301 *et seq.* was most certainly aware that a "profession" is different from other occupations and trades. The Legislature mandated that a determination of what is a "profession" "shall at all times be determined solely and exclusively by the provisions of this Chapter." *See* La. Rev. Stat. 12:1320(A). Contracting is not included among the professional corporations listed in Title 12 of the Revised

Statutes.  Furthermore, there is no indication the legislature intended for licensed contractors to owe a separate, non-contractual duty to their customers as may members of the enumerated professions.

To follow the rulings of the lower courts would allow the general rule of limited liability to be swallowed up by the narrow professional duty exception whenever a member of the L.L.C. has obtained a state license to practice his trade or occupation.  In addition to the professions recognized by Title 12 of the Revised Statutes, there are some fifty-seven other "professions and occupations" also licensed by the State of Louisiana.[4]  Interpreting subsection (D) of La. Rev. Stat. 12:1320 as encompassing all "professions and occupations" licensed by the state, on the sole ground of their licensure, would lead to absurd results, and extend the narrow professional duty exception to limited liability to situations the legislature never intended to be covered thereby.  *See Smith v. Town of Vinton*, 25 So.2d 237 (La. 1946).  The public policy of the State, which supports limited liability as a general rule within L.L.C. business entities, is embodied in the corresponding statute, and a court may not substitute its social and economic beliefs for the judgment of the Louisiana Legislature.  *See Ogea*, 13-1085, p. 26, 130 So.3d at 906 (*citing Retired State Employees Association v. State*, 13-0499, p. 7 (La. 6/28/13), 119 So.3d 568, 573).

For these reasons, we find Mrs. Nunez failed to show Mr. Lenard was a "professional" subject to the personal liability exception set forth in La. Rev. Stat. 12:1320(D).  As a contractor, Mr. Lenard was not engaged in a "profession" as would be generally understood.  Thus, we hold the lower courts erred in extending

---

[4] *See* State of Louisiana – Professional and Occupational Licenses, http://louisiana.gov/Services/POLicenses/.

the scope of the professional duty exception in La. Rev. Stat. 12:1320(D) to contractors simply because they are licensed by the state.

III) Negligent or Wrongful Act

Though not reached by the appellate court majority, we next address the plaintiff's contention, in support of the judgment in her favor, that Mr. Lenard committed a "negligent or wrongful act" for which he can be held personally liable. *See* La. Rev. Stat. 12:1320(D). As with the professional duty exception, the terms "negligent or wrongful act" are not defined by the statute. Accordingly, this court in *Ogea* articulated four factors to consider in determining whether a member may be held personally liable for his negligent or wrongful acts:

> "1) Whether a member's conduct could be fairly characterized as a traditionally recognized tort; 2) whether a member's conduct could be fairly characterized as a crime, for which a natural person, not a juridical person, could be held culpable; 3) whether the conduct at issue was required by, or was in furtherance of, a contract between the claimant and the LLC; and 4) whether the conduct at issue was done outside the member's capacity as a member."

*Ogea*, 13-1085 at 15, 130 So.3d at 900-01.

Thus, we will review the facts established in the record under these guidelines to determine whether Mr. Lenard committed a "negligent or wrongful act" when he failed to check the proper elevation of Mrs. Nunez's house. *See Ogea*, 13-1085 at 24, 130 So.3d at 906. For the reasons set forth below, we find Mr. Lenard's acts or failures to act did not constitute a "negligent or wrongful act" subjecting him to personal liability.

First, we cannot say Mr. Lenard's failure to either perform the elevation survey himself or to have one of his employees do so may be fairly characterized as a tort. There is no showing Mr. Lenard owed a duty to Mrs. Nunez with regard to the elevation of the residence outside of the obligations of the contract. The

existence of a duty is a question of law. *Ogea*, 13-1085 at 24, 130 So.3d at 905 (*citing Faucheaux v. Terrebonne Consol. Government*, 615 So.2d 289, 292 (La. 1993)).

A showing of poor workmanship arising out of a contract entered into by the L.L.C., in and for itself, is insufficient to establish a "negligent or wrongful act" arising under La. Rev. Stat. 12:1320(D). *Ogea*, 13-1085 at 25, 130 So.3d at 905-06. In *Ogea*, the defendant operated a bulldozer himself, and supervised the contractor who poured the defective concrete foundation at issue therein. *Ogea*, 13-1085 at 24, 130 So.3d at 905. Under those facts, we found the defendant's conduct was undertaken in furtherance of the contract, and he did not owe a separate tort duty to the plaintiff. *Id.*

Here, Mrs. Nunez failed to show Mr. Lenard owed her a separate tort duty susceptible to engage his personal liability. Indeed, the obligation to check the proper elevation of the house arises from the contract formed between Mrs. Nunez and the L.L.C., which provides the residence must comply with "all national, state, and local building codes and laws." The flood elevation requirements arise from both national (FEMA) and local rules (Cameron Parish Flood Damage Prevention Ordinance). The record shows Mr. Lenard did not supervise the proper elevation of the slab before proceeding to the construction of Mrs. Nunez's house, and did not check it himself, although he testified he would normally do so. Although these failures constitute a breach of the contract, poor workmanship is not sufficient to hold Mr. Lenard personally liable for these breaches, as they arise from the contract entered into with Pinnacle.

We also find no showing Mr. Lenard's acts or failures to act violated a criminal statute granting a right of restitution to Mrs. Nunez. In *Ogea*, we noted

12

that "if the conduct at issue constitutes a crime, that fact weighs in favor of allowing the victim(s) to recover against the offender." *Ogea*, 13-1085 at 18, 130 So.3d at 902. Nevertheless, only crimes for which a natural person may be held culpable should be considered, although the member need not have been actually convicted of the crime to establish the factor of criminal conduct as a "negligent or wrongful act." *Ogea*, 13-1085 at 19-22, 130 So.3d at 902-903. Moreover, we caution that a violation of a criminal statute, whether prosecuted or not, is but one factor to consider in determining whether an exception to the rule of limited liability would lie.

Here, Mrs. Nunez alleges Mr. Lenard's conduct violated Section 7-35 of the Cameron Parish Flood Damage Prevention ordinance, which reads as follow:

    a. **The applicant** must contact the Cameron Parish Police Jury **when the forms for the foundation are complete or** structure is moved on the site within thirty (30) days of the issuance of the development permit**.** The inspector will **determine if the structure is in accordance with the base flood elevation requirements**.

    b. If the applicant fails to comply with the development permit application and the base flood elevation requirements, the **floodplain administrator will send a certified letter to the applicant informing the applicant of the violation**. If the **applicant fails to comply with requirements**, within (30) thirty days of receipt of the certified letter, **said violation shall constitute a misdemeanor**.

    c. **Any person** who violates **this chapter or fails to comply with any of its requirements** shall upon conviction thereof be fined not more than five hundred dollars ($500.00) or imprisoned for not more than six (6) months, or both, for each violation and, in addition, shall pay all costs and expenses involved in prosecution of such case. [Emphasis added.]

Cameron Parish Police Jury, Louisiana, Code of Ordinances, Section 7-35

The record does not support a conclusion Mr. Lenard's acts or failures to act constituted a violation of the ordinance at issue, as defined therein. Section 7-35 of the ordinance requires, in its subsection (a), that the Cameron Parish Police Jury be

contacted by "the applicant." The record shows the following: (1) the development permit was delivered to "Russel & Jennifer Diane Nunez," registered as owners; (2) the "applicant information" section is empty; (3) "Allen Leonards"[5] was named on the permit under the "contractor information" section; and (4) the permit was signed by Mrs. Diane Nunez. Because Mr. Lenard is not "the applicant" on the development permit, we do not find Section 7-35 of the ordinance to be applicable to him.

Moreover, Subsection (b) states the elements required for a violation resulting in potential criminal sanctions, and subsection (c) merely states the penalty that may be applied when a violation occurs and a conviction obtained. Subsections (a) and (b) place a duty solely on "the applicant," and not simply upon "any person," to comply with the requirements of the permit. The applicant is the person who must contact the Parish inspector, to whom a certified letter is sent to inform him of any non-compliance, and who has a duty to comply with the requirements of the certified letter. Here, the ordinance provides that the parish inspector be contacted "when the forms of the foundation are complete," pursuant to which an "inspector will determine if the structure is in accordance with the base flood elevation requirements." There is some question whether the parish itself will perform the elevation survey to make this determination, but the record testimony suggests the parish inspector was awaiting the elevation survey from the applicant before making its determination. The failure to obtain the survey consequently prevented the parish inspector from identifying a potential violation of the flood elevation requirements, and the applicant to be informed of the violation by certified letter, pursuant to the dispositions of subsection (b) of

---

[5] Although the contractor's name is "Allen Lenard," it was erroneously written as "Allen Leonards."

14

Section 7-35 of the ordinance. In short, no letter was ever sent by the parish. While Mr. Lenard's alleged failures undoubtedly constitute a contractual violation, they do not constitute a crime pursuant to which Mr. Lenard could be held personally liable in his capacity as a member of the L.L.C., because, as subsection (b) explains, a misdemeanor violation is only constituted upon the applicant's failure to comply with the requirements of the certified letter sent by the floodplain administrator to the applicant.

The third factor requires deciding whether Mr. Lenard's conduct was in furtherance of the contract between Mrs. Nunez and the L.L.C. As previously held in *Ogea*, "if the reason a member is engaged in the conduct at issue is to satisfy a contractual obligation of the L.L.C., then the member should be more likely to qualify for the protections of the general rule of limited liability in La. Rev. Stat. 12:1320(B)." *Ogea*, 13-1085 at 22, 130 So.3d at 904. We find Mrs. Nunez failed to show Mr. Lenard's acts or failures to act did not arise in furtherance of the contract. Mr. Lenard's supervision of his employees with regard to the proper elevation of the house, or checking the elevation himself, which he testified he sometimes did, were acts required by or in furtherance of the contract between Mrs. Nunez and the L.L.C.

Finally, the record establishes Mr. Lenard's alleged failures to act fall within the context of his membership in the L.L.C. and were not undertaken in a personal capacity. Here, the plaintiff's claim is one alleging poor workmanship arising out of a residential construction contract. As we noted in *Ogea*, "To hold that poor workmanship alone suffice[s] to establish personal liability would allow the exception in La. Rev. Stat. 12:1320(D) to negate the general rule of limited liability in La. Rev. Stat. 12:1320(B)." *Ogea*, p. 25, 130 So.3d at 905-06.

DECREE

For the reasons set forth above, the judgment of the court of appeal affirming the trial court's judgment in favor of the plaintiff is reversed insofar as it finds the individual member of the L.L.C. personally liable.[6] Judgment is hereby rendered in favor of the defendant, Mr. Lenard, in his individual capacity as a member of the L.L.C., dismissing all claims against him.

**REVERSED; JUDGMENT RENDERED**

---

[6] As indicated, this judgment addresses only the liability of Mr. Lenard, individually, and has no impact on the L.L.C.'s liability, which was not at issue.

SUPREME COURT OF LOUISIANA

No. 2015-C-0087

JENNIFER DIANE NUNEZ

VERSUS

PINNACLE HOMES, L.L.C. and SUA INSURANCE COMPANY

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL
THIRD CIRCUIT, PARISH OF CAMERON

**JOHNSON, Chief Justice, dissents and assigns reasons.**

I respectfully dissent. In this case, Mrs. Nunez contracted with Pinnacle Homes, L.L.C. to build her home. Mr. Lenard, a state licensed residential and commercial construction contractor, is the sole member of that L.L.C. It is undisputed that Mrs. Nunez's home did not meet required elevation levels. The estimated cost to raise the house to the required base flood elevation exceeds $200,000. The majority of this court finds Mr. Lenard was not personally liable to Mrs. Nunez for his negligent or wrongful acts. I disagree.

An LLC member's protections against personal liability is not unlimited. *Ogea v. Merritt*, 13-1085, 130 So. 3d 888, 897 (La. 12/10/13). To encourage commerce, the legislature has limited personal liability for some debts incurred or acts performed on behalf of business entities. However, this statute was not intended to shield professionals from liability for personal negligence. *Regions Bank v. Ark-La-Tex Water Gardens, L.L.C.*, 43,604 (La. App. 2 Cir. 11/5/08), 997 So. 2d 734, 740. Specifically, La. R.S. 12:1320 provides:

> A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.

> B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in

1

such capacity for a debt, obligation, or liability of the limited liability company.

C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.

D. **Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member**, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, **because of any breach of professional duty or other negligent or wrongful act by such person**, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

In this case, flood elevation requirements mandated that Mrs. Nunez's home be elevated 10 feet above sea level. This requirement is confirmed on the building permit issued to Mrs. Nunez by the Cameron Parish Police Jury. The majority recognizes that "Mr. Lenard did not supervise the proper elevation of the slab before proceeding to the construction of Mrs. Nunez's house, and did not check it himself, although he testified he would normally do so." However, the majority finds these failures are simply breaches of the construction contract.

In my view, Mr. Lenard's conduct goes beyond poor workmanship under the contract. Mr. Lenard owed Mrs. Nunez a duty not only to construct a home of acceptable quality, but also to ensure the home was built in compliance with the law. The record supports a finding that Mr. Lenard individually committed a negligent act by building a home in violation of the building permit issued by the Cameron Parish Policy Jury and in violation of the Flood Plain Ordinance of Cameron Parish. Mr. Lenard failed to properly calculate and/or confirm the amount of dirt that would be required to bring the property to proper grade/elevation, and failed to have an elevation shot performed after the dirt work was completed and prior to beginning construction on plaintiff's home.

It was ultimately the responsibility of Mr. Lenard, the licensed contractor on

2

the job, and not the homeowner to ensure the house was built in compliance with the mandated base flood elevation. The record is clear that he failed to do so. Now, due to Mr. Lenard's negligent acts, Mrs. Nunez's home must be raised in order to be in compliance with the flood elevation requirement.

Thus, based on the facts of this case, I would find Mr. Lenard personally liable for Mrs. Nunez's damages resulting from his failure to build her home in compliance with the legally mandated flood elevation level.