hKOSTELKA, J.
Betsy Reagan Crawford (“Crawford”) and Charlotte Reagan Magee (“Magee”) (collectively referred to as “Appellants”), the major daughters of the deceased G.M. “Son” Reagan (“Son”), appeal the judgment of the trial court which denied the majority of their claims that Melinda Lee Reagan (also known as Alsa Lee) (“Melinda”) had converted funds belonging to their father, Son. Finding no manifest error by the trial court, we affirm.
Facts
In 1939, Son married Loreece Thames (“Loreece”), and of this marriage two children were born: Crawford and Magee. Loreece became both mentally and physically disabled in 1963, remaining in that state for the remainder of her life. For many years, Son cared for Loreece in the family home. In 1984, Son met Melinda, and in November of 1984, Melinda moved into the family home and assisted him in caring for Loreece. In late 1985 and early 1986, both Son and Melinda experienced health problems, so that neither was able to care for the disabled Loreece. Consequently, on February 2, 1986, Loreece was moved into a nursing home, where she ultimately died on June 15, 1994. On or about October 22, 1994, Son and Melinda married, which marriage was subject to a Marriage Contract disclaiming the community property regime. Shortly thereafter, on May 12,1995, Son died of cancer.
After Son’s death, Appellants filed their Petition to Recover Sums Due against Melinda alleging that she had converted thousands of dollars to her own use.[1] After a sporadic three day trial, the trial court made the following determinations: (1) Melinda owed Appellants a reimbursement for Son’s funeral in the amount of $5,385.65; (2) some of the proceeds from a sale of Son’s cattle | ^immediately prior to his death were not a completed manual gift to Melinda, and, therefore, she must reimburse Appellants $1,792.45; (3) a certain bull was owned one half by Melinda and one half by Son; therefore, Appellants were allowed to keep the bull but ordered to pay Melinda her one-half interest in the bull in the amount of $750.00; (4) an equipment blade in the possession of Melinda’s *1119 son, John Lee, was only loaned to him and not given; therefore, it must be returned to Appellants[2]; (5) a certain dinette set must be returned to Appellants; and (6) Melinda was granted a platter and the frozen wedding cake. All other demands of the parties were denied. This appeal by Appellants ensued.
Discussion

Burden of Proof and Conversion

Appellants’ first and second assignments of error address the burden of proof applied by the trial court. In their first assignment, they argue that the trial court erred in determining they had a heavy burden of proof to show Melinda had converted funds and personal property to her own use. In their second assignment, they argue that the trial court erred in finding they had a heavy burden of proof in demonstrating that any donations received by Melinda were invalid.
Appellants argue that the trial court’s placement of the burden of proof on them was in error, because instead of considering the issue of conversion, the trial court should have considered the law on matrimonial regimes, mandate or donation. This argument is misplaced. Primarily, we note that in their Petition to Recover Sums Due, Appellants make specific claims regarding sums of money as well as property allegedly taken by Melinda for her own personal use. Clearly, the nature of this claim is simply one of conversion. There was no allegation that laMelinda was Son’s agent, and the prayer made no request for an accounting by Melinda. Their allegations simply set forth various amounts of money and property that Appellants allege Melinda retained for her own use, and in the end, they pray for the return of a certain sum. The trial court properly characterized the nature of this lawsuit as one in conversion, not an issue of matrimonial regimes, mandate or donations. The record before us does not indicate any allegations by Appellants that Melinda was the mandatary of Son or that Son had made donations to Melinda that were invalid. Although Appellants raised these arguments in their post-trial rebuttal memorandum, the record before us shows that the Appellants neglected to present these issues in their petition or any of the supplemental petitions presented to the trial court. They are, therefore, precluded from raising them for the first time on appeal. URCA Rule 1-3; Matthews v. Pete Mercer Const., 33,085 (La.App.2d Cir.4/07/00), 758 So.2d 379, unit denied, 00-1218 (La.6/16/00), 764 So.2d 965; Risinger v. State Farm Mut. Auto. Ins. Co., 29,023 (La.App.2d Cir.06/18/97), 711 So.2d 293.
Moreover, we determine that the trial court properly placed the burden on the Appellants to prove that Melinda had converted funds or property from Son. In an action for conversion, such as this, it is incumbent upon a plaintiff to prove his claim by a preponderance of the evidence. Young Oil Co. of Louisiana, Inc. v. Durbin, 412 So.2d 620 (La.App. 2d Cir.1982); Bee Enterprises, Inc. v. Dennis, 425 So.2d 1007 (La.App. 5th Cir.1983).
A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; |4or 7) ownership is asserted over the chattel. Dual Drilling Co. v. Mills Equipment Investments, Inc., 98-0343 (La.12/01/98), 721 So.2d 853, 857.
*1120 Although Appellants argue that Melinda acted without authorization, Crawford admitted having no actual knowledge of the transactions involving her father and Melinda. She acknowledged the fact that Son and Melinda did a lot of “mixing” of their funds. Moreover, the Appellants were unable to prove with any certainty exactly what amounts they claimed Melinda had converted. When specifically asked if she could tell the court with any degree of certainty how much Melinda owed Appellants, Crawford replied, “There’s no telling how much.” Appellants offered no evidence to indicate Melinda acted without Son’s authority, which would be necessary to prove she converted his funds. In fact, the evidence indicated otherwise-that Melinda acted with Son’s authority and knowledge. In fact, Melinda testified that she never acted without authority from Son, and the testimony of other witnesses as to Son’s character tended to corroborate this claim. Crawford’s own testimony confirms that Son trusted Melinda. When asked whether she had ever thought to question Melinda’s finances, Crawford replied, “if I had have asked [Son] probably would have sent me from the house.... He wouldn’t allow me to ask her questions because it would be to imply that she might be doing something improper.”
The trial court determined specifically that Son maintained authority over the record keeping, whereas Melinda maintained the actual records of the couple. Although Appellants argue this finding is internally inconsistent, we conclude that it reasonably reflects the evidence presented at trial, and it further serves to support the trial court’s ultimate finding that the Appellants failed to prove the elements of conversion. The testimony offered by the witnesses was invariant on the issue of Son’s attitude toward keeping his books: he did not care to be bothered. Melinda [¡¡testified that Son made her a signatory on his account so she could pay his bills and “take that responsibility off of him.” Magee noted that Son had told her:
[Melinda] took care of all of his business, she knew how to run businesses and to make things work and that he trusted her to do it, and he said that she was good — a good manager and so, he really didn’t get into his own business, that’s the one downfall Daddy had was he did not take care of his business like he should, he did not when my mother was alive either. That was one of her complaints about him was that bills didn’t get paid on time and — she would give him specific things to go pay and he wouldn’t get it done and she would have to then, you know, take care of it, ...
Crawford testified that Son had told her that Melinda “took care of all of the bank accounts.”
However, despite the fact that he handed over his books to Melinda, the trial court’s conclusion that he maintained control at the same time is not necessarily inconsistent so as to be in error. Melinda repeatedly stated that she never performed a transaction that was not authorized by Son. The testimony of other witnesses makes it evident that Melinda’s claim was accurate. Crawford described her father as being “hard,” and “difficult,” and that, “We did what daddy asked us to do because we had no other choice.” Alton McKeithen, a friend of Son’s since 1946, described Son as a man who did things his way and was not easily influenced. Magee testified that Son was strong-willed and was in control of everything he wanted to control. Finally, Paul Crawford (“Paul”), Son’s grandson and Crawford’s son, described how he often worked for his grandfather, both at Son’s house and Melinda’s house. Paul stated that regardless of where he worked, Son would pay him, and he would simply sign the check and direct Paul as to the amount for which to make the check. Considering the foregoing, we conclude that the evidence presented at trial supports the trial court’s factual finding that whereas Melinda maintained Son’s checking account and *1121 conducted his business transactions, she still did so under Son’s authority.
| ^Further, in reaching its conclusion that the evidence presented did not support the claims that Melinda had converted funds, the trial court considered that Melinda and Son had comingled their income, expenses and farm operations. Even Appellants’ trial counsel at one point characterized the relationship as a “joint venture.” Considering the record before us, this finding appears reasonable and not clearly wrong.
We recognize that a true community of acquets and gains never existed between Melinda and Son, because no community could have existed between them during the period of time Son was still married to Loreece. But the evidence indicates that during this time Melinda and Son did co-mingle their incomes, expenses, and to some extent even their farm operations. Melinda testified that whereas each party had their own checking account, she was a signatory on Son’s account, and later her name was added to the account. She stated that “we never made no difference with out [sic] money. What was mine was his and what was his was mine.” Melinda explained that whereas she would on some occasions deposit funds that belonged to Son in her personal account, those funds would be used to pay expenses that bene-fitted both parties. A ledger introduced in evidence at trial which she kept in 1994 and 1995 corroborates that testimony. She also testified that she likewise deposited her own funds in Son’s checking account on occasion. Melinda described how she and Son would buy feed for their cattle together and feed them from the jointly owned reserve, although the cattle were always kept separate.
In Crawford’s testimony she concurred that “[Son and Melinda] did a lot of mixing, .... ” An example of the kind of “mixing” that went on between the two is reflected in Paul’s testimony when he explained that when helping Son, he worked as much at Melinda’s house and camp as at Son’s house, but it was Son|7who paid him. Paul also corroborated Melinda’s claim that the feed for both hers and Son’s cattle came from a shared source.
Prior to Son’s and Melinda’s marriage in October of 1994, they entered into a Marriage Contract, wherein they disclaimed the community of acquets and gains that would have otherwise been established. First, we note that the period of time in which the couple operated under a Marriage Contract was very short, approximately seven months, especially in comparison to the duration of the entire relationship of eleven years. Second, although a Marriage Contract did exist, and Son and Melinda did comply with it in some respects (i.e., they kept their cattle physically separated), they also obviously went beyond the terms and both gave to the marriage financially, either out of generosity or love. Clearly, neither expected any kind of accounting or reimbursement from the other. See, Johnson v. Johnson, 614 So.2d 884 (La.App. 3d Cir.1993), writ denied, 617 So.2d 916 (La.1993). Finally, the Marriage Contract contained a provision that Son and Melinda would each “contribute in substantially equal proportions to the expenses of the marriage.” The testimony at trial supports this provision.
An additional factual finding by the trial court was that Melinda and Son had loaned and given one another money and property during their relationship. In this case, the Appellants argue that this finding was in error, specifically arguing that three items, Melinda’s travel trailer, burglar bars and gravel (the latter two items also for her camp), were not valid donations. However, we find that the evidence at trial supports the trial court’s finding.
In order to show that a manual gift was made, there must exist strong and convincing proof that a donor had the intent to irrevocably divest himself of a thing and that delivery was made. Terrell v. Terrell, 26,863 (La.App.2d Cir.05/10/95), 655 So.2d 600, 603. The donor’s outward *1122 acts, together with any Inadmissible evidence of the relationship of the parties, are important to prove a manual donation. Id. Moreover, donative intent is largely a question of fact. Id.
Additionally, we note that Son had the ability to manage the community property belonging to him and Loreece pursuant to La. C.C. art. 2346.[3] Any donations he may have made to Melinda during the pen-dency of the community with Loreece were made in accordance with La. C.C. art. 2349[4]; see, also, Succession of Caraway, 25,879 (La.App.2d Cir.06/22/94), 639 So.2d 415.
In the instant case, the trial court apparently found Melinda’s testimony regarding the specific items, as well as others, more credible. A review of the record shows that a reasonable factual basis existed for the trial court’s finding that Son had the intent to make certain gifts to Melinda. Melinda stated that Son had helped her pay for the travel trailer as a gift, and that they both enjoyed using it. She further stated that he had helped pay for burglar bars and gravel for her camp, because he enjoyed using the camp and spent a lot of time there. Her testimony was corroborated by Crawford, who described her father as a generous man who enjoyed making people happy if he could, which tends to support a finding that Son had the requisite donative intent to make such manual gifts to Melinda.
Melinda repeatedly referred to a loan she made to Son in the amount of $5,000, and Crawford testified that Son had told her and Magee about the loan. | nMelinda explained that at one point in time, Son had even farmed a portion of her land, for which she was not compensated.
Considering the foregoing, we conclude that the trial court did not err in its determination that Appellants had the burden of proving that Melinda had converted funds and/or property. Moreover, the trial court carefully considered the evidence presented and made a correct conclusion that Appellants failed to carry the properly assigned burden by a preponderance of the evidence. Nor can we conclude that the trial court erred in finding that Son made valid donations or gifts to Melinda, some of which may have been in the nature of reimbursement. As a result, the trial court’s finding that Melinda did not convert to her own use any money and/or property belonging to Son, Loreece, Crawford and/or Magee was not in error.

Findings of fact by the trial court

The remainder of Appellants’ assignments of error dispute the specific findings of fact made by the trial court. Initially, we note that:
It is well settled that the district court’s finding of fact may not be set aside on appeal in the absence of manifest error or unless it is clearly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the fact finder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). An appellate court should not substitute its opinion for the conclusions made by the district court, which is in a unique position to see and hear the witnesses as they testify. In re A.J.F., 00-0948 (La.6/30/00), 764 So.2d 47. The *1123 trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. Adkins v. Huckabay, 99-3605 (La.2/25/00), 755 So.2d 206.
Leal v. Dubois, 00-1285 (La.10/13/00), 769 So.2d 1182. It is apparent from the trial court’s Reasons for Judgment and the findings of fact made therein that the trial court found Melinda the more credible witness. Moreover, the testimony of the | mother witnesses at trial did not contradict Melinda’s testimony but actually corroborated her statements. Where the trial court has not committed manifest error in its reasonable findings of fact, we will not substitute our judgment for that of the trial court. We do not believe that the findings of fact made by the trial court were clearly wrong, and in fact, by the evidence shown, appear reasonable.
In their third assignment of error, the Appellants argue that the trial court erred in its finding that Melinda and Son lived as man and wife from the time Melinda moved in with Son until he died. Obviously, Melinda and Son were not legally “man and wife” until their marriage in 1994. The trial court was only comparing the relationship of Melinda and Son to that of a married couple when it stated that Melinda and Son “lived together as man and wife.... ” In fact, the trial court acknowledges that Melinda and Son were not a married couple, but acted as if they were, later in its reasons by stating, “They conducted their business in this manner from the time they commenced living together until the death of [Son], the same as if they were in fact husband and wife.” (Emphasis added). Considering the testimony of all witnesses, this finding was not clearly wrong. Although Appellants attempted to characterize Melinda as a manipulating woman who only sought to take advantage of their father, Crawford admitted that her father loved Melinda. Melinda also testified that she loved Son. There was also testimony that Son and Melinda shared a bedroom, traveled together, went out dancing, camped, and worked together in caring for their cattle. Clearly, the trial court’s finding that Son and Melinda’s relationship was comparable to or like that of a “man and wife” was a perfectly reasonable comparison. Moreover, we do not believe that this comparison by the trial court pollutes its final determination, because the trial court’s ultimate decision was not based on an erroneous benefit to Melinda of any legal rights that a true wife would have. Ultimately, the findings against Appellants on their claims of conversion were based on their failure to prove their Incase. The relationship enjoyed by Melinda and Son was only a factor acknowledged by the trial court in weighing what evidence was presented at trial. Therefore, we find no error in the trial court’s reasoning.
In the Appellants’ eighth assignment of error they dispute another finding of fact made by the trial court — that Son and Melinda had substantially the same wealth at the end of their relationship as they had at the beginning. Melinda also testified on this issue, stating that in 1984 she owned her land (approximately 146 acres), her camp, and fifty to sixty head of cattle, which is what she claimed to own upon Son’s death. Appellants did not contradict this, nor was there evidence that indicated Melinda was inaccurate. Crawford testified that in 1984, Son had eighty acres and his house, along with “a lot more in debt than he had in money.” At his death, Son no longer owned his house or the land. These had been deeded to Appellants when they paid off the debt he owed on the property, undisputedly not a result of any action by Melinda. As for the size of his herd from 1984 to 1995, Crawford also confirmed that “[Son’s] cows were always about the same. There was no great big difference in the number of cows.” This finding of fact was relevant in light of the Appellants’ characterization of Melinda as someone seeking to enrich herself at Son’s expense. To the contrary, *1124 the evidence indicated that Melinda had greater wealth and income than Son. Therefore, we do not believe the trial court was in error on this issue.
Finally, in their eleventh assignment of error, Appellants argue that the trial court erred in its determination that Melinda had made a proper accounting of all matters related to various funds and/or property belonging to son, Loreece, Crawford and/or Magee. In its Reasons for Judgment, the trial court did determine that Melinda had “made a proper accounting of all matters ...” relating to various property. However, when read in context, it is apparent that the “proper accounting” the trial court is referring to is its acceptance of Melinda’s testimony ^regarding her explanation of what had occurred between her and Son, with the exceptions noted therein. Moreover, as noted previously, Appellants failed to request any formal accounting by Melinda, or a basis for such a request, in any of their petitions. We find no error here.
Conclusion
Therefore, for the foregoing reasons, we affirm the judgment of the trial court and assess all costs of the appeal to Appellants.
AFFIRMED.

. The appeal record does not contain an answer filed by Melinda, although there is indication that she not only filed an answer but also a reconventional demand as reflected by the Appellants’ Answer to Reconventional Demand. Additionally, the clerk of court for the Fifth Judicial District Court had no record of an answer having been filed by Melinda.

. Although John Lee was made a party to these proceedings in the Appellants’ First Supplemental Petition, the record does not reflect that an answer was filed by him. This was the only disposition by the trial court as to John Lee.

. La. C.C. art. 2346 states as follows: "Each spouse acting alone may manage, control, or dispose of community properly unless otherwise provided by law.”

. La. C.C. art. 2349 states as follows: "The donation of community property to a third person requires the concurrence of the spouses, but a spouse acting alone may make a usual or customary gift of a value commensurate with the economic position of the spouses at the time of the donation.”