Judge Terri F. Love
This appeal derives from disputes regarding the commercial lease of property used for an art market in New Orleans. The lessor successfully evicted the lessee, a limited liability company. Subsequently, when the lessor attempted to deposit past rent checks, the bank refused to negotiate the checks, indicating that the account was closed. The lessor filed a reconventional demand alleging fraud, conversion, and criminal conduct on the part of the limited liability company and the member/manager. The lessee limited liability company and its member/manager filed exceptions of no cause of action and vagueness. The trial court granted the exceptions as it relates to the member/manager in her individual capacity.[1]
The lessor appeals contending that the trial court erred by granting the exceptions, *216 or, at the very least, should have permitted it a chance to amend its reconventional demand to cure the defects. We find that the trial court correctly sustained the exception of no cause of action. However, the trial court abused its discretion by not allowing the lessor to amend the reconventional demand. This matter is remanded to the trial court to afford the lessor the opportunity to amend within the time provided by the trial court.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
An Erny Girl, L.L.C. ("Erny") leased the premises located at 619 Frenchman Street in New Orleans to operate the Frenchmen Art Market from BCNO 4, L.L.C. ("BCNO"). After operating the Frenchmen Art Market for a time, BCNO sought to evict Erny from the premises. The facts surrounding BCNO's eviction of Erny were summarized by this Court as follows:
On January 28, 2016, Erny Girl filed a Petition for Damages, Declaratory Judgment and Permanent Injunction (the "Declaratory Action"), captioned " An Erny Girl, L.L.C. v. BCNO 4 L.L.C. and John Gregory Fox ," which was allotted to Division "C" of the Orleans Parish Civil District Court ("CDC"). In its Declaratory Action, Erny Girl requested, among other things, a declaration that "the Lease is effective and continuing through June 9, 2016, and that the defendant, BCNO [4], is obligated and ordered to cease any and all attempts to improperly terminate the lease and undermine Lessee's peaceful possession."
In the Declaratory Action, Erny Girl alleged the following regarding the term of the Lease:
• The Lease had an initial term of February 1, 2013 through January 31, 2014 (Section 2 of the Lease);
• Sometime after January 31, 2014, Erny Girl began discussing a renewal option with BCNO 4; and around June 1, 2014, BCNO 4 and Erny Girl renewed the Lease for an additional year, through June 1, 2015.
• Around February 25, 2015, BCNO 4 began to discuss and negotiate with Erny Girl an additional renewal of the Lease for a third term.
• On June 9, 2015, BCNO 4 and Erny Girl agreed to a renewal option on the Lease, extending the Lease through June 9, 2016.
On the same day it filed the Declaratory Action (January 28, 2016), Erny Girl, by letter, attempted to exercise the renewal option under the Lease and thereby extend the term of the Lease to June 9, 2017. The letter stated that Erny Girl was "electing to exercise its renewal option within Section 4 of the Lease, extending the term of the Lease through June 9, 2017." The renewal clause (Section 4 of the Lease), however, provided that "Tenant shall have the option to renew this lease thirty (30) days before the end of the initial term." (Emphasis supplied).
By letter dated February 15, 2016, BCNO 4 rejected Erny Girl's attempted renewal of the Lease, stating:
[Erny Girl's] attempt to exercise the option to renew is without effect. The lease had an initial term of one year, expiring January 31, 2014 (See Section 2), with an option to renew for an additional one year term expiring January 31, 2015 (See Section 4). Upon expiration of the renewal term on January 31, 2015, the lease converted to month to month term. On January 11, 2016, my client [BCNO 4] sent the lessee written notice of lease termination, effective February 12, 2016.
*217 In its answer to the Declaratory Judgment Action, BCNO 4 asserted that the Lease was validly terminated as of February 12, 2016. BCNO 4 also filed a reconventional demand requesting, among other thing [sic], "a declaratory judgment be issued, stating that the Lease expired on February 12, 2016." Additionally, BCNO 4 gave Erny Girl notice to vacate.
Thereafter, BCNO 4 filed two petitions for possession (eviction actions). Both actions were entitled " BCNO 4, L.L.C. v. An Erny Girl ;" both actions were filed in the same case number and allotted to CDC Division "J." The first action, which was filed on April 25, 2016, sought to evict Erny Girl based on its failure to maintain all-risk property insurance as required by the Lease (the "First Eviction Action."). The second action, which was filed on June 24, 2016, sought to evict Erny Girl based upon its judicial admission in its Declaratory Action that the Lease terminated on June 9, 2016 (the "Second Eviction Action"). Although Erny Girl was served with the Second Eviction Action on July 28, 2016, it failed to file an answer to that action.
On July 25, 2016, Erny Girl filed a declinatory exception of lis pendens . On July 29, 2016, Erny Girl filed an unverified answer to the First Eviction Action. The trial court, in Division "J," set a hearing on the lis pendens exception for August 15, 2016.
In opposing Erny Girl's lis pendens exception, BCNO 4 suggested that the trial court in Division "J"-the division in which the eviction actions (the later filed actions) were pending-transfer the eviction actions to Division "C"-the division in which the Declaratory Action was pending (the earlier filed action). See La. Rules for District Courts, Rule 9.4 (b) (providing that "all subsequent actions asserting the same claim by the same parties ... shall be transferred to the division to which the first case filed was allotted, whether or not the first case is still pending."). Adopting the suggestion, the trial court in Division "J" transferred the eviction actions to Division "C" on August 1, 2016.
On August 15, 2016, a hearing was held, in Division "C," on both BCNO 4's pending eviction action and Erny Girl's lis pendens exception. On August 17, 2016, the trial court rendered judgment overruling Erny Girls' [sic] lis pendens exception and granting BCNO 4's Second Eviction Action. In its written reasons for judgment, the trial court stated as follows:
After hearing argument, this Court overruled An Erny Girl, L.L.C.'s Exceptions of Lis Pendens filed in response and opposition to BCNO 4, L.L.C.'s two Petitions for Possession of Premises, finding that lis pendens, La. C.C.P. Art. 531, is inapplicable in this matter. An Erny Girl's "Petition for Damages, Declaratory Judgment, And Permanent Injunction" seeks a declaration from the Court that the lease is effective through June 9, 2016. BCNO 4, L.L.C.'s second "Petition for Possession of Premises", filed June 24, 2016, seeks possession of the premises based on the expiration of the lease on June 9, 2016, which An Erny Girl, L.L.C. judicially admitted in their Petition. The Declaratory Judgment action does not assert any right to possession past June 9, 2016.6
From this judgment, Erny Girl filed a suspensive appeal.
An Erny Girl, L.L.C. v. BCNO 4 L.L.C. , 16-1011, pp. 1-5 (La. App. 4 Cir. 3/30/17), 216 So.3d 833, 835-37, reh'g denied (Apr. 18, 2017), writ denied , 17-0815 (La. 6/29/17), 222 So.3d 48 (footnotes omitted).
*218 This Court converted the suspensive appeal to a devolutive appeal and affirmed the judgment of the trial court, upholding Erny's eviction. Id. , 16-1011, p. 18, 216 So.3d at 844.
Following the denial of writs by the Louisiana Supreme Court, on July 13, 2017, BCNO attempted to deposit eight rent checks written by Katherine Erny Gaar, the member/manager of Erny, for rents due from February 2016 - October 2016. However, the bank returned the checks, as Erny's account was closed. Subsequently, BCNO filed a Supplemental Reconventional Demand ("Demand") against Ms. Gaar, as the member and manager of Erny. The Supplemental Reconventional Demand sought $43,940 in past rent and $96 for check fees charged by the bank.
Ms. Gaar and Erny filed exceptions of no cause of action and vagueness, asserting that the checks were legally stale by July 13, 2017, when BCNO attempted to negotiate them.[2] The trial court granted the exceptions of vagueness and no cause of action as to Ms. Gaar, and dismissed her without prejudice. BCNO's devolutive appeal followed.
STANDARD OF REVIEW
"Exceptions of no cause of action present legal questions, which are reviewed using the de novo standard of review." O'Dwyer v. Edwards , 08-1492, p. 3 (La. App. 4 Cir. 6/10/09), 15 So.3d 308, 310.
"Because the district court's judgment on an exception of vagueness is based on a factual determination, an appellate court reviews the district court's judgment under the manifest error standard of review." Frankowski v. Frankowski , 16-1313, pp. 2-3 (La. App. 4 Cir. 2/22/17), 214 So.3d 35, 37.
NO CAUSE OF ACTION
" 'The function of the peremptory exception of no cause of action is to question whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition.' " O'Dwyer , 08-1492, p. 4, 15 So.3d at 310 ; quoting Indus. Co., Inc. v. Durbin , 02-0665, p. 6 (La. 1/28/03), 837 So.2d 1207, 1213. "An exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief." Jamison v. D'Amico , 06-0842, p. 9 (La. App. 4 Cir. 3/14/07), 955 So.2d 161, 167.
"In deciding whether to sustain an exception of no cause of action, the court accepts the facts alleged in the plaintiffs' petition without reference to any extraneous supporting or controverting evidence and determines whether the law affords any relief to the plaintiff if those facts are proved at trial." Bibbins v. City of New Orleans , 02-1510, p. 2 (La. App. 4 Cir. 5/21/03), 848 So.2d 686, 689. "[T]he well-pleaded facts in the petition must be accepted as true." Id. , 02-1510, p. 2, 848 So.2d at 690. "The burden of proof is on the exceptor." Id. , 02-1510, p. 3, 848 So.2d at 690.
"The trial court may not assume any facts not in the plaintiff's original or amended petitions in determining whether to grant an exception of no cause of action." Id. , 02-1510, p. 5, 848 So.2d at 691. "It is insufficient to state a cause of action where the petition simply states legal or factual conclusions without setting forth *219 facts that support the conclusions." Id. "The pertinent question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's behalf, the petition states any valid cause of action for relief." Ramey v. DeCaire , 03-1299, p. 8 (La. 3/19/04), 869 So.2d 114, 119.
Supplemental Reconventional Demand
BCNO alleged in the Demand that Ms. Gaar was the member/manager of Erny. The Demand alleged the following:
4.
From February 2016 through October 2016, Erny Girl, acting through Gaar, issued checks in payment of rent to BCNO 4 as follows: # 5074 in the amount of $4,680.00; # 5097 in the amount of $5,180.00; # 5101 in the amount of $5,180.00; # 5064 in the amount of $5,680.00; # 5086 in the amount of $5,680.00; # 5080 in the amount of $5,680.00; # 5121 in the amount of $5,680.00; and # 5109 in the amount of $6,180.00 (the "Rent Checks").
* * *
8.
BCNO 4 held the Rent Checks pending a resolution of the litigation over possession. On July 13, 2017, after the appellate court judgment became final, BCNO 4 attempted to deposit the Rent Checks
9.
On July 17, 2017, Erny Girl's bank returned the Rent Checks unpaid and marked "Account Closed" and charged BCNO 4 a fee of $12.00 per dishonored check. See Exhibit "A".
* * *
11.
Erny Girl never disputed that it owed rent to BCNO 4 for the months it possessed the Leased Premises and operated its business.
12.
On the contrary, Erny Girl delivered the Rent Checks to BCNO 4, represented to this court that it had always paid the rent due BCNO 4 and, commencing November 2016, agreed to deposit monthly rent into the registry of this court. See Exhibit "C", Erny Girl's "Memorandum in Support of Opposition to BCNO 4's Motion to Declare Suspensive Appeal Bond Insufficient ," filed herein on October 14, 2016.
13.
After this court's judgment became final, Gaar made public statements that she had continued to pay rent during the litigation over possession of the Lease Premises. See In Globo Exhibit "B" attached hereto.
14.
Upon information and belief, and despite her public representations on the contrary, Gaar closed the Erny Girl account after this court's judgment became final but before BCNO 4 deposited the Rent Checks.
15.
BCNO 4 has made demand on Erny Girl and Gaar to pay the rent in the amount of $43,940.00, plus $96.00 in dishonored check fees, but defendants have failed to remit payment.
16.
BCNO 4 never forgave Erny Girl the sums due and represented by the Rent Checks, and it never authorized the closure of the Erny Girl account.
17.
Gaar's closing the Erny Girl account, with the Rent Checks outstanding, removing the funds from the account, and then refusing to remit payment of the sums due BCNO 4 constitute conversion, *220 for which Erny Girl should be found liable and for which for Gaar, individually, should be found liable under La. R.S. 12:1320(D).
18.
Gaar's closing the Erny Girl account, with the Rent Checks outstanding, removing the funds from the account and placing them beyond the reach of BCNO 4, the owner of the funds, and then refusing to remit payment of the sums due BCNO 4, constitute a violation of one or more provisions of Louisiana Revised Statutes Title 14, which subjects Gaar to individual liability under La. R.S. 12:1320(D).
19.
Gaar's personal actions also amount to fraud, which subjects her to individual liability under La. R.S. 12:1320(D). Gaar caused Erny Girl to remain in possession of BCNO 4's immovable property beyond the time provided by the Lease. While it possessed the premises, Erny Girl issued the Rent Checks to avoid eviction for failure to pay rent.
20.
Gaar caused Erny Girl to make rent payments by check and to represent to this court that the rent had been paid. Gaar personally represented to BCNO 4 and the public at large that the rent has been paid. BCNO 4 held the Rent Checks until this court's judgment became final. Gaar closed the Erny Girl account without notice to BCNO 4 and then refused to remit payment for the rent due.
21.
The circumstances described above make clear that Gaar's representations regarding the rent payments were made with the intent to obtain an unjust advantage and to cause loss or inconvenience to BCNO 4.
Subsequently, BCNO amended the Demand to include:
14.
Upon information and belief, and despite her public representations on the contrary, Erny Girl closed its bank account on November 3, 2016, before BCNO 4 deposited the Rent Checks. See , Exhibit "D."
Legal Relationship of a Limited Liability Company and Its Member(s)
BCNO contends that the Demand pled a cause of action against Ms. Gaar pursuant to La. R.S. 12:1320.
However, "the personalities of an L.L.C. and its members are wholly separate by law." Nunez v. Pinnacle Homes, L.L.C. , 15-0087, p. 5 (La. 10/14/15), 180 So.3d 285, 289. "[T]he legislature clearly intended to promote business in the state by limiting personal liability for some debts incurred or acts performed on behalf of business entities." Id. "Thus, the legislature intended to shield individual members, managers, and employees of an L.L.C. from liability, albeit with certain exceptions." Id. , 15-0087, p. 6, 180 So.3d at 289.
Holding an L.L.C. member personally liable for obligations of the L.L.C. is referred to as piercing the corporate veil. Ogea v. Merritt , 13-1085, p. 6 (La. 12/10/13), 130 So.3d 888, 895. "With regard to the jurisprudential doctrine of 'piercing the corporate veil,' Louisiana courts have generally allowed this remedy when one of two exceptional circumstances exists." Hodge v. Strong Built Int'l, LLC , 14-1086, p. 4 (La. App. 3 Cir. 3/4/15), 159 So.3d 1159, 1163. Firstly, if "the company is the 'alter ego' of the members and has been used to defraud third parties." Id. Secondly, if "the members have failed to conduct business on a 'corporate footing' such that *221 it is not possible to distinguish the corporation from its managers." Id. The theory of piercing the corporate veil is applicable to limited liability companies as well as corporations. ORX Res., Inc. v. MBW Expl., L.L.C. , 09-0662, p. 6 (La. App. 4 Cir. 2/10/10), 32 So.3d 931, 935.
Further, La. R.S. 12:1320(B) states that "[e]xcept as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company." However, Section D outlines exceptions for those engaged in fraud, breach of professional duty, or a negligent/wrongful act.
Fraud
"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. C.C. art. 1953. "In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally." La. C.C.P. art. 856. " 'A mere allegation of fraud, unaccompanied by factual allegations setting forth with particularity the circumstances which constitute the same, is a mere conclusion of the pleader and does not set forth a cause of action as to fraud.' " Ivy Rest. New Orleans, LLC v. Torre , 16-0777, p. 6 (La. App. 4 Cir. 2/1/17), 211 So.3d 676, 680 ; quoting Loeb v. Badalamenti , 192 So.2d 246, 249 (La. App. 4th Cir. 1966). " 'It is insufficient to plead merely that a defendant defrauded a plaintiff.' " Ivy , 16-0777, p. 6, 211 So.3d at 680 ; quoting Private Connection Prop., Inc. v. Fox Cars, LLC , 08-1129, p. 10 (La. App. 4 Cir. 2/10/09), 6 So.3d 866, 872.
While BCNO contends that Ms. Gaar made misrepresentations regarding the fact that she continued to pay rent throughout the litigation, the record reflects that she was writing the checks to pay the rent when she made the statements. It is undisputed that all of the checks were over six months old when BCNO attempted a negotiation. No allegations contend that the checks were written on insufficient funds at the time of authorship or that Ms. Gaar knew the checks remained outstanding when she closed the account. Likewise, the Demand lacks nonconclusory allegations that Ms. Gaar intended to cause a loss or inconvenience to BCNO. The Demand also does not set forth that Erny was the alter ego of Ms. Gaar. Therefore, we find BCNO's present Demand failed to set forth with specificity Ms. Gaar's alleged misrepresentations or suppressions of truth to substantiate a claim of fraud.
Negligent or Wrongful Conduct
"[T]he 'negligent or wrongful act' exception differs from the other exceptions examined because the 'negligent or wrongful act' exception contains two distinct concepts (i.e., the exception applies to an act that is 'negligent' or an act that is 'wrongful')." Ogea , 13-1085, p. 14, 130 So.3d at 899. The Louisiana Supreme Court found that four factors "assist" the determination of whether negligent or wrongful conduct has occurred "while also respecting the general limitation of liability." Id. , 13-1085, p. 16, 130 So.3d at 900. The factors are as follows:
1) whether a member's conduct could be fairly characterized as a traditionally recognized tort; 2) whether a member's conduct could be fairly characterized as a crime, for which a natural person, not a juridical person, could be held culpable; 3) whether the conduct at issue was required by, or was in furtherance of, a *222 contract between the claimant and the LLC; and 4) whether the conduct at issue was done outside the member's capacity as a member.
Id. , 13-1085, p. 16, 130 So.3d at 900-01. "A court is to evaluate each situation on a case-by-case basis and consider each of the above factors when determining whether the general rule of limited liability must yield to the exception for a member's 'negligent or wrongful act.' " Ogea , 13-1085, p. 24, 130 So.3d at 905. Further, " 'the phrase 'or other negligent or wrongful act by such person' must refer to acts done outside one's capacity as a member, manager, employee, or agent of the limited liability company.' " ORX Res. , 09-0662, p. 6, 32 So.3d at 935 ; quoting Curole v. Ochsner Clinic, L.L.C. , 01-1734, pp. 7-8 (La. App. 4 Cir. 2/20/02), 811 So.2d 92, 97.
BCNO's Demand did not allege that Ms. Gaar was acting outside her capacity as a member/manager of Erny. See ORX Res. , 09-0662, p. 6, 32 So.3d at 935. Therefore, BCNO failed to state a cause of action against Ms. Gaar based on negligent or wrongful conduct.
Conversion
BCNO also asserts that it sufficiently pled a cause of action for conversion against Ms. Gaar. "Generally, 'conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion.' " New Orleans Jazz & Heritage Found., Inc. v. Kirksey , 09-1433, p. 17 (La. App. 4 Cir. 5/26/10), 40 So.3d 394, 405 ; quoting Quealy v. Paine, Webber, Jackson & Curtis, Inc. , 475 So.2d 756, 760 (La. 1985). This Court held that "[a] conversion is committed when any of the following occurs:
1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel.
New Orleans Jazz & Heritage Found. , 09-1433, p. 17, 40 So.3d at 405-06.
Ownership of the allegedly converted goods is the main requirement for conversion. BCNO was not the owner of the actual money in the closed account or the account itself. Without ownership, BCNO has not stated a cause of action for conversion against Ms. Gaar.
VAGUENESS
"[T]he purpose of the dilatory exception of vagueness is to allow a defendant to be placed on notice of the cause of action and prevent its future re-litigation after a judgment is obtained." Frankowski , 16-1313, p. 2, 214 So.3d at 37. "The exception, however, does not permit the defendant to demand exactitude and detail beyond what is necessary for the above purposes." Id. , 16-1313, p. 2, 214 So.3d at 37. Because we found that the trial court correctly maintained the exception of no cause of action, we pretermit discussion on the exception of vagueness.
AMENDMENT
Alternatively, BCNO maintains that the trial court should have granted it the opportunity to amend the Demand to cure the defect.
La. C.C.P. art. 934 provides:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the *223 petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.
Further, "[i]f the allegations of the petition are merely conclusory and fail to specify the acts or circumstances that establish a cause of action, then the trial court should permit the plaintiff the opportunity to amend." McClain v. City of New Orleans , 13-1291, p. 8 (La. App. 4 Cir. 3/5/14), 137 So.3d 671, 677. Moreover, "[t]he language of La. C.C.P. art. 934 does not limit a plaintiff to a single amendment of her petition; rather, additional opportunities for amendment of a petition may be allowed in the discretion of the court." Id. , 13-1291, p. 9, 137 So.3d at 677.
Ms. Gaar contends that BCNO waived its right to amend the Demand because it failed to object at the hearing and did not request extra time to amend in the opposition to the exceptions or at the hearing. This Court previously held that parties who fail to object or request the opportunity to amend waive the right to raise the issue on appeal. Hershberger v. LKM Chinese, L.L.C. , 14-1079, p. 6 (La. App. 4 Cir. 5/20/15), 172 So.3d 140, 144. However, this Court is mindful that La. C.C.P. art. 934 states that the trial court "shall" order amendment when the grounds of the exception may be removed. Moreover, La. C.C.P. art. 2164 provides that "[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal."
Based on the facts and circumstances contained in the record before us and the claims alleged by BCNO, we find that the trial court abused its discretion by not permitting BCNO an opportunity to amend the Demand, as it relates to fraud. BCNO can amend the Demand without changing the substance of the claims yet removing the grounds of the exception. Therefore, amendment would not be a vain and useless act, as to the claim of fraud. Accordingly, we remand the matter to the trial court to afford BCNO an opportunity to amend its Demand within the time allotted by the trial court.
DECREE
For the above-mentioned reasons, we find that the trial court correctly sustained the exception of no cause of action. However, we find that the trial court abused its discretion by not permitting BCNO to amend the Demand. The matter is remanded to the trial court to give BCNO the opportunity to amend the Demand within a delay set by the trial court.
AFFIRMED AND REMANDED

The L.L.C. is not before this Court on appeal.

It is undisputed that all of the checks were over six months old when negotiation was attempted.