| | | |
|---|---|---|
| DE ROME A. SEALS | * | NO. 2019-CA-0458 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| ROBERT L. LUCIEN AND | * | |
| QUALITY MACHINERY, INC. | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-02410, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *
(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart,
Judge Joy Cossich Lobrano)


De Rome A. Seals
1527 Gallier Street
New Orleans, LA 70117

    PLAINTIFF/APPELLANT, IN PROPER PERSON

Morris H. Hyman
Elizabeth L. Hyman
LAW OFFICE OF MORRIS H. HYMAN
710 Carondelet Street, Third Floor
New Orleans, LA 70130

    COUNSEL FOR DEFENDANT/APPELLEE

                              AFFIRMED

                        OCTOBER 23, 2019

This is a tort case. Plaintiff/appellant, De Rome A. Seals ("Seals"), appeals the March 12, 2019 district court judgment granting a motion for involuntary dismissal in favor of defendants/appellees, Wisam Ottallah and New City Mart, LLC d/b/a Brown Derby #3 (collectively "Brown Derby"). For the reasons that follow, we affirm.

On March 9, 2016, Seals filed a petition for damages,[1] alleging that on March 1, 2, and 3, 2016, he parked a Mercury Cougar (the "Cougar"), displaying a "for sale" sign, on a sidewalk adjacent to the Brown Derby, a convenience store. He alleged that on March 3, 2016, the Cougar was towed without his consent. Seals claimed in his petition that Brown Derby violated La. R.S. 32:1736 of the Louisiana Towing and Storage Act and was liable for "illegal nonconsensual

---

[1] The original defendants named in Seals' petition were Robert L. Lucien and Quality Machinery, Inc. On May 11, 2016, Seals amended his petition wherein he substituted Wisam Ottallah and New City Mart, LLC d/b/a Brown Derby #3 as defendants. No towing company was named as defendant in this litigation.

towing of a vehicle," gross negligence, and intentional infliction of mental and emotional distress.[2]

On February 13, 2019, the case proceeded to a bench trial, at which Seals appeared in proper person and counsel represented Brown Derby. Seals introduced as evidence a series of photographs of a different vehicle, which he parked in the location from which the Cougar was towed. He also introduced photographs of the Brown Derby property, reflecting the location of signs posted on the building, reading as follows:

> PRIVATE PROPERTY PARKING ONLY
> DAY-NIGHT-WEEKEND
> VIOLATORS WILL BE TOWED AT OWNERS' EXPENSE
> fee $107.50 plus other charge
> 504-638-1166
> 504-218-9119
> THREE BROTHERS QUICK TOWING
> 2100 POYDRAS STREET

Seals was the only testifying witness, and he called no other witnesses. Seals testified that, at various times over a three-day period, he parked the Cougar on a

---

[2] Seals claimed entitlement to $500,000.00 in punitive damages and $2,500.00 for the value of the Cougar. He alleged that, as a result of the events alleged in his petition, he suffered:

1. Aggravation of pre-existing illnesses;
2. Undue stress/anxiety;
3. Being psychologically and emotionally traumatized / mental and emotional anguish;
4. Loss of the use of a vehicle;
5. Insomnia;
6. Loss of appetite;
7. Decreased life expectancy;
8. Decreased ability to pursue happiness and liberty;
9. Loss of sales;
10. Homicidal/suicidal ideations;
11. Heightened irascibility;
12. Decreased desire for sexual relations; and
13. Nightmares

sidewalk near the Brown Derby.[3] According to Seals, the Cougar was on "city" property and not on the premises of Brown Derby.

Seals testified that the Cougar was towed on the third day. Before the tow, he found a note left on the Cougar, stating that, if Seals left the Cougar overnight, it would be towed. After discovering the note, Seals spoke with a woman working behind the cash register at the Brown Derby, who informed Seals that she had written the note. He testified that he did not move the Cougar after he saw the note because he did not leave the Cougar overnight.

Seals learned that the Cougar was towed via a telephone call from a prospective buyer. The towing company did not contact him. Seals denied that he knew the name and telephone number of the towing company. Seals denied that the sign posted on the building on the day of the tow had a telephone number for the towing company. He also testified that he could "barely read" and did not know if the sign had the name and telephone number of the towing company.

Seals testified that an unidentified person inside Brown Derby told him the Cougar was towed "under the bridge." He did not ask this person for a telephone number for the towing company. He testified that he learned where the Cougar was towed by contacting the police, who advised him of locations "under the bridge" where the tow yard could be, and he proceeded to drive to various locations to look for the Cougar.

---

[3] The Brown Derby is located on the corner of South Jefferson Davis Parkway and Tulane Avenue in New Orleans, which is a busy intersection. Seals testified that he chose to park the Cougar in that location to get more "exposure" for the sale of the Cougar than he would have received if parked in front of his home.

Seals admitted that he filed this lawsuit before he looked for the Cougar. He did not go to the tow yard until one month later. Seals identified photographs of the Cougar that he had taken at the tow yard, and stated that he went to the tow yard to confirm that the Cougar remained in the same condition as before it was towed. He denied that anyone at the tow yard had informed him that the Cougar could be released if he paid a $141 fee, but he stated that he could not have afforded to pay that amount.

Following the close of Seals' case-in-chief, Brown Derby orally moved for involuntary dismissal, arguing that Seals had not presented any evidence that he owned the Cougar or that Brown Derby ordered the Cougar towed. The district court granted the motion from the bench. On March 12, 2019, the district court rendered judgment granting the motion for involuntary dismissal and dismissing the case with prejudice. This appeal followed.

While Seals sets forth seven "issues presented for review,"[4] the primary issue before this Court is whether the district court erred in dismissing Seals'

_____

[4] Seals' issues presented for review are as follows:

1. Whether the Property owner is required to place "Tag for Removal" on vehicles allegedly illegally parked on the property in question?
2. Whether property owners are required to have Law enforcement: local police, authority to tow alleged illegally parked vehicle?
3. Whether the property owner is required to produce evidence that an illegally parked vehicle was on said property?
4. Whether the trial Judge can argue the case for the defendant and interject new issues at the trial: proof of ownership?
5. Whether clear-posted signs are required to be place[d] on the entrances and exits of Property [that] serves as businesses [that] states: "No Parking" and the name, address, and telephone number of the place to which illegally vehicle shall be towed?
6. Whether the Towing Company must be in a valid contract with the property owner?
7. Whether the property owner is required to provide the reason for the towing of vehicles to the owner?

claims after he introduced no documentary evidence at trial that he owned the Cougar.

Appellate courts review involuntary dismissals under the manifest error / clearly wrong standard of review. *Alday v. CSXT Transp., Inc.*, 2007-1308, p. 2 (La. App. 4 Cir. 9/24/08), 992 So.2d 1094, 1096 (citation omitted). "[W]here two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Id.* "Thus, a reversal requires that no reasonable factual basis exist for the trial court's findings." *Id.*, 2007-1308, pp. 2-3, 992 So.2d at 1096.

Louisiana courts typically construe a claim for damages – stemming from illegal towing – as an action for conversion, which is a tort arising under La. C.C. art. 2315.[5] *Johnson v. Hardy*, 98-2282, p. 6 (La. App. 1 Cir. 11/5/99), 756 So.2d 328, 331; *Navratil v. Smart*, 400 So.2d 268, 272 (La. App. 1st Cir. 1981). "This action is grounded on the unlawful interference with the ownership or possession of a movable. . . ." *Johnson*, 98-2282, p. 6, 756 So.2d at 331 (quoting *Dual Drilling Co. v. Mills Equip. Investments, Inc.*, 98-0343, p. 4 (La. 12/1/98), 721 So.2d 853, 857). The Supreme Court explained the elements of a conversion claim as follows:

> A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership

---

[5] "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. art. 2315(A).

5

is asserted over the chattel. FRANK L. MARAIST & THOMAS C. GALLIGAN, LOUISIANA TORT LAW § 1–2, at 3 (1996 & Supp. 1998); *Importsales, Inc. v. Lindeman*, 231 La. 663, 92 So.2d 574 (La. 1957); *see also Louisiana State Bar Assoc. v. Hinrichs*, 486 So.2d 116 (La. 1986). The conversion action is predicated on the fault of the defendant and directed to the recovery of the movable or, in the alternative, the plaintiff may demand compensation.

*Dual Drilling*, 98-0343, pp. 4-5, 721 So.2d at 857 (footnote omitted).

"In an action for conversion, … it is incumbent upon a plaintiff to prove his claim by a preponderance of the evidence." *Crawford v. Reagan*, 34,417, p. 3 (La. App. 2 Cir. 2/28/01), 779 So.2d 1116, 1119. "[T]he preliminary determination in a conversion claim must be the ownership of the property…" *Worthy v. McClelland*, 2006-1575, p. 5 (La. App. 4 Cir. 4/2/08), 995 So.2d 636, 639. *See also An Erny Girl, L.L.C. v. BCNO 4 L.L.C.*, 2018-0360, p. 13 (La. App. 4 Cir. 9/26/18), 257 So.3d 212, 222 ("Ownership of the allegedly converted goods is the main requirement for conversion."). The burden of proof is on the plaintiff to establish ownership of the property that he alleges was converted. *Worthy*, 2006-1575, p. 5, 995 So.2d at 639. *See also F.G. Bruschweiler (Antiques) Ltd. v. GBA Great British Antiques, L.L.C.*, 2003-0792, p. 8 (La. App. 5 Cir. 11/25/03), 860 So.2d 644, 650 (where no agency relationship was proven, "no party can be found guilty of conversion of [plaintiff's] funds because [plaintiff] maintained no ownership interest in the funds").

Here, Seals was the only testifying witness at trial. Seals testified that he parked the Cougar and that it was towed. He did not, however, introduce any title, registration, or other documentary evidence at trial, demonstrating that he is the Cougar's owner. On this evidence, the district court found that Seals had not

established by a preponderance of the evidence that he owned the Cougar. We find no manifest error in the district court's determination.

Addressing Seals' other arguments relative to the burden of proof in an illegal towing claim, Seals contends that the district judge "interject[ed]" the issue of "proof of ownership" and "argue[d] the case for the defendant." There is no support for this argument in the record. Rather, the record is clear that Brown Derby argued – in support of its motion for involuntary dismissal – that Seals had not met his burden of proof as to ownership of the Cougar.

Seals also argues that "the property owner is required to produce evidence that an illegally parked vehicle was on said property." We find no merit in this contention. A plaintiff, not a defendant, bears the burden of proving his conversion claim by a preponderance of the evidence. *Worthy*, 2006-1575, p. 5, 995 So.2d at 639; *Crawford*, 34,417, p. 3, 779 So.2d at 1119. Under the facts of this case, after Seals failed to prove ownership of the towed vehicle, it was unnecessary for Brown Derby to introduce any evidence in its defense or for the district court to adjudicate whether the Cougar was towed from Brown Derby's property.

Seals' remaining arguments arise from Brown Derby's alleged noncompliance with La. R.S. 32:1736,[6] a provision of the Louisiana Towing and

---

[6] The Act provides, in pertinent part:

> B. No tow truck operator engaged in the nonconsensual tow of a motor vehicle from any parking area shall tow the motor vehicle unless the tow has been authorized by a law enforcement agency of competent jurisdiction or the motor vehicle has been tagged for removal. However, if the billing invoice has been signed by the property owner or his authorized representative prior to the unauthorized vehicle being towed or if the provisions of Subsection C of this Section are applicable, the vehicle shall not be required to be tagged for removal. Any tow truck operator towing a vehicle from a parking area or private property

Storage Act, which governs towing motor vehicles from private property. Scant

Louisiana cases have addressed whether a private property owner or towing

company can be liable for civil damages for noncompliance with this statute.

---

shall provide a billing invoice to the owner or redeemer of the motor vehicle which invoice complies with applicable law and shall include the following information:
> (1) Date and time of service.
> (2) The tow truck operator's name and the time of departure.
> (3) The name of the law enforcement agency requesting the tow, if applicable.
> (4) Itemization of all fees charged for service.
> (5) Any additional information required by the Louisiana Public Service Commission.

C. Property owners who tow unauthorized vehicles from their property or parking areas shall place signage in clearly visible locations at the entrances and exits to such property warning motorists that unauthorized vehicles may be towed. If the property has specific parking areas or parking spaces where vehicles are subject to be towed, the specific parking area or parking space that a vehicle is subject to be towed from must also be clearly marked warning the motorist their vehicle may be towed. Such warning shall include signage in each designated parking area or the marking of the individual parking spaces in these specific parking areas. A property owner or his authorized representative who enters into contracts or agreements with a tow truck company to engage in tow-related services and activities shall place signage in clearly visible locations at the entrances and exits to such property or parking areas warning motorists that unauthorized vehicles may be towed. The signage shall include the name, address, and phone number of the towing company in lettering no less than two inches in height. Tow truck company owners and drivers shall ensure that the property, parking areas, and spaces are clearly marked prior to the removal of any vehicle. Additionally, a copy of the written contract or agreement entered into between the property owner or his authorized representative and the tow truck company shall be maintained at the business office of the property owner and the business office of the tow truck company and in the tow truck. The written contract or agreement shall define the parking rules and reasons for towing. The written contract or agreement shall be dated and signed by all parties and include telephone contact numbers for the property owner or their authorized agent and the tow truck company owner, or their authorized agent. The written contract or agreements shall indicate the starting date of the towing service, and the specific date of termination of such agreement. Property owners meeting the requirements of this Subsection shall not be required to tag a motor vehicle for removal or sign the billing invoice prior to towing.

…

E. Any tow truck operator who fails to comply with the provisions of this Section, who fails to provide a billing invoice which contains the information required by this Section to the redeemer of the motor vehicle, or who tows a vehicle in violation of this Section shall be in violation of the provisions of R.S. 14:68.4 and shall be subject to any applicable penalty prescribed by law, including but not limited to the revocation of the towing license. Lack of knowledge of the conduct of a tow truck company employee shall not be a defense for the tow truck company owner.

In *Johnson v. Hardy*, the First Circuit rejected a plaintiff's argument that she had a separate claim under this statute, which would defeat the one-year prescriptive period for tort claims. 98-2282, p. 10, 756 So.2d at 334. The court recognized that plaintiff's claim, that her vehicle was towed without her consent, was an action for conversion, a tort. *Id.*, p. 9, 756 So.2d at 333. The First Circuit held:

> The Louisiana Towing and Storage Act provides that any person who fails to comply with the provisions of the Act shall forfeit all claims for towing services and storage of such automobiles and shall be subject to an administrative fine. La. R.S. 32:1274. The Act also provides for the imposition of criminal penalties. La. R.S. 32:1275. However, it does not expressly authorize a private right of action for civil damages. We conclude that if the legislature had intended such a result, it would have included language expressly recognizing such a cause of action…

*Id.*, p. 10, 756 So.2d at 334.

However, in *Wilson v. T & T Auto Repair & Towing, LLC*, 50,095, pp. 8-9 (La. App. 2 Cir. 9/30/15), 180 So.3d 437, 442, the Second Circuit, noting that a towed vehicle was sold without notice to the owner in violation of the Act, held that the towing defendant violated the Louisiana Unfair Trade Practices Act, La. R.S. 51:1409.

While it may be conceivable that evidence of noncompliance with this statute could support a claim for damages, depending on the facts of a given case,[7]

---

[7] *See, e.g., Faucheaux v. Terrebonne Consol. Gov't*, 615 So.2d 289, 292-93 (La. 1993)("The violation of a statute or regulation does not automatically, in and of itself, impose civil liability. Civil responsibility is imposed only if the act in violation of the statute is the legal cause of damage to another."); *Bellsouth Telecommunications, Inc. v. Eustis Eng'g Co.*, 2007-0865, pp. 5-6 (La. App. 4 Cir. 12/19/07), 974 So.2d 749, 752 ("a statutory violation must be determined as a legal cause of the accident. . . . the finding of a violation of a statute is only the beginning of a duty-risk analysis.").

the record before us lacks the evidence to support such a finding. Rather, we find that, in the absence of evidence that Seals owned the Cougar, Brown Derby has no civil liability for damages for any violation of the Louisiana Towing and Storage Act. Seals' arguments lack merit.

For these reasons, we cannot say that the district court was manifestly erroneous in granting Brown Derby's motion for involuntary dismissal and dismissing this lawsuit. Accordingly, we affirm the judgment of the district court.

**AFFIRMED**